UNITED PHOSPHORUS, LTD.
and United Phosphorus,
Inc., Plaintiffs,

v.

MICRO–FLO, LLC, Micro–Flo
Company and Basf Corpo-
ration, Defendants.

C.A. No. 01C–05–030–JRJ.

Superior Court of Delaware,
New Castle County.

Submitted: Sept. 13, 2001.
Decided: Nov. 26, 2001.

Michael P. Kelly, Esquire, McCarter & English, LLP, Wilmington, Mark Troobnick, Esquire and James Wright, Esquire, Wright & Sielaty, P.C., Lake Ridge, Virginia 22192–3026 for Plaintiffs.

Richard D. Kirk, Esquire, Morris, James, Hitchens & Williams, Wilmington, Andrew L. Deutsch, Esquire, Tracey G. Turner, Esquire and Jeffrey F. Liss, Esquire, Piper, Marbury, Rudnick & Wolfe, LLP, New York, New York 10020 for Defendants.

## ORDER

JURDEN, J.

### I. *Procedural Background*

Before the Court is a Motion to Dismiss or Stay the Action filed by Defendants Micro–Flo LLC, Micro–Flo Company and BASF (collectively referred to as "Micro–Flo"). The action sought to be dismissed was filed against Defendants by United Phosphorous, Ltd. and United Phosphorous Inc. (collectively referred to as "UP") in this Court on May 4, 2001. In support of its motion, Micro–Flo contends that because it filed a prior action against UP involving essentially the same parties and issues in the Superior Court of Cook County, Georgia on January 23, 2000 (the "Georgia Action"), dismissal or a stay of this later filed Delaware Superior Court action is warranted under the "first-filed rule."

The dispute between these parties spans several years and involves multiple courts. The chronology is important for determining the instant motion. UP fired the first salvo by suing Micro–Flo in the United States District Court for the District of Delaware on October 23, 1999 (the "District of Delaware Action"). Jurisdiction in that action was based upon a federal question—a violation of the Lanham Act.[1] That suit also included a number of pendent

1. 15 *U.S.C.* § 1125(a).

state claims, including misappropriation of trade secrets, breach of contract, fraud, conversion, unfair competition and violations of the Delaware Deceptive Trade Practices Act.[2] Micro–Flo moved to dismiss that action for lack of jurisdiction. While the District of Delaware Action was pending, Micro–Flo commenced the Georgia Action against UP in Georgia State Court. UP removed the Georgia Action to the United States District Court for the Middle District of Georgia on March 2, 2000 and also moved to dismiss. On March 30, 2001, the Middle District of Georgia denied UP's motion to dismiss and issued a scheduling order that required UP to file its answer, along with any counterclaims, by May 14, 2001.

On September 29, 2000, the Delaware District Court granted Micro–Flo's motion to dismiss the District of Delaware Action for lack of jurisdiction. UP appealed to the United States Court of Appeals for the Third Circuit. On November 6, 2001, the Third Circuit affirmed the dismissal by the Delaware District Court.[3]

Meanwhile, in the Georgia Action, discovery has been underway for many months. The parties have exchanged initial disclosures required under the Federal Rules,[4] propounded document requests and interrogatories, agreed on a confidentiality order, and exchanged over 12,000 pages of documents. There is a tentative trial date in the Georgia Action of November 2002.

During oral argument on Micro–Flo's motion to dismiss or stay the instant action, UP asserted that its complaint, filed in this Court on May 4, 2001, was the first-filed action because it filed the District of Delaware Action before Micro–Flo filed

the Georgia Action. In essence, UP's argument is that this Court should consider the District of Delaware Action and the case *sub judice* as one. According to UP, notwithstanding the fact that on October 3, 2000 the District of Delaware dismissed the District of Delaware Action for lack of jurisdiction, and that dismissal was recently affirmed by the Third Circuit Court of Appeals, the pendent state claims were preserved under the savings provision of the Delaware Code.[5] UP interprets that provision to hold that if a party files an action in federal court and that action is subsequently dismissed, that party has one year from the date of dismissal to "refile in the right forum." [6] Thus, argues UP, because UP included pendent State law claims in its original complaint, the subsequent dismissal by the District of Delaware Court triggered its right to refile in Delaware Superior Court anytime before October 4, 2001. UP therefore asserts that because UP filed its complaint in this Court prior to that deadline, its first-filed status was maintained. The Court disagrees that UP's invocation of the savings statute confers upon it first-filed status. For the reasons explained below, Defendants' motion to dismiss is **GRANTED**.

## II. *Factual Background*

### A. *The Parties and the Nature of the Dispute*

Plaintiff United Phosphorous Inc. is a Delaware corporation with its principal place of business in Exton, Pennsylvania. Plaintiff United Phosphorous Ltd. is incorporated and has its principal place of business in Bombay, India. UP manufactures and sells chemicals used as raw materials in formulating pesticides including the

---

2. 6 *Del. C.* § 2531–2536.

3. *United Phosphorous, Ltd. v. Micro–Flo LLC,* No. 00–3695, 276 F.3d 582 (3rd Cir. Nov. 6, 2001).

4. Fed.R.Civ.P. 26.

5. 10 *Del. C.* § 8118.

6. Tr. Oral Argument of Aug. 6, 2001 at 32.

chemicals technical acephate and technical permethrin. These chemicals are generated in UP's Indian plants and shipped for export as needed.

Defendants Micro–Flo LLC[7] and Micro–Flo Company are Georgia corporations. They are generic manufacturers of insecticides after the patents for those products have expired. Micro–Flo is a wholly owned subsidiary of defendant BASF, which is a Delaware corporation.[8] Micro–Flo lacks the capability to manufacture the essential chemical ingredients and thus purchases them from other companies for use in formulating end-use acephate and permethrin products.

Sometime in the mid–1990s, the parties entered into an agreement whereby Micro–Flo would purchase technical acephate from UP at its Indian plant.[9] Later on, Micro–Flo allegedly also agreed to purchase permethrin from UP. At some point, disputes arose with respect to these contractual agreements. Apparently, the permethrin acquisitions never came to fruition and Micro–Flo discontinued its acephate purchases from UP and began to acquire this chemical elsewhere. Micro–Flo alleges that it agreed to a price increase in acephate in exchange for a promise from UP for the marketing rights to another pesticide called Devrinol. According to Micro–Flo, UP raised the price for acephate but never assigned to Micro–Flo the rights to market Devrinol in the United States.

### B. This Suit and The District of Delaware Action

In the suit presently before this Court, UP asserts a variety of state common law claims and statutory violations against Micro–Flo. Each claim stems from the events described above. UP's complaint alleges that Micro–Flo proposed to enter into a supply and marketing agreement with UP and purchase their requirements for technical acephate. Pursuant to this agreement, Micro–Flo requested and obtained proprietary and trade secret information from UP regarding this chemical. Apparently, this information was needed by Micro–Flo to enable it to secure a mandatory EPA registration. According to UP, once this information was provided, Micro–Flo acquired the EPA registration but refused to enter into the long-term purchase agreement with UP. Instead, alleges UP, Micro–Flo obtained the acephate from another source, and, using UP's trade secrets, secured the EPA registration. UP alleges essentially the same series of events transpired with respect to the technical permethrin.

These alleged transactions form the basis of UP's District of Delaware action. UP stated during the hearing on Micro–Flo's motion to dismiss that its later filed Delaware Superior Court suit (this action) is identical to the District of Delaware action but for the Lanham Act claim.[10]

---

7. Counsel for Micro–Flo represented to the Court at the hearing on Defendants' Motion to Dismiss or Stay that Micro–Flo LLC is no longer an active entity. (Tr. Oral Argument of Aug. 6, 2001 at 16).

8. According to Micro–Flo, BASF's liability attaches, if at all, under a theory of ratification. Apparently, BASF acquired Micro–Flo after the alleged tortious acts transpired. (Def's. Mot. Dismiss at 3).

9. Use of technical products, such as technical acephate or permethrin, is regulated under the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. § 136 et seq., and the Environmental Protection Agency ("EPA") through its implementing regulations at 40 C.F.R. Parts 152 through 186. Accordingly, before any such product can be imported, distributed or sold in the United States, it must first be registered by the EPA and bear a specific EPA-approved label. (Pl's. Del.Super. Ct. Compl. at 3).

10. Tr. Oral Argument of Aug. 6, 2001 at 32.

## C. *The Georgia Action*

In the Georgia Action, Micro–Flo alleges that while in negotiations with another company to purchase technical acephate, UP approached Micro–Flo and offered to sell it technical acephate of 97% purity at a cost lower than that from UP's competitor. Based upon these representations, UP decided to forego its purchases from the other company and began to acquire the acephate from UP. Micro–Flo alleges that shortly thereafter UP raised its price. UP told Micro–Flo that it was negotiating to acquire the exclusive rights to market another pesticide, Devrinol, and if Micro–Flo agreed to pay the higher price for the acephate, UP would assign to Micro–Flo its exclusive rights to market Devrinol in the United States. Micro–Flo claims that the acephate was delivered late, was not 97% pure as required, and the rights to the Devrinol were never assigned notwithstanding the price increase for the acephate.

Micro–Flo commenced the Georgia Action against UP for breach of contract, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty for a particular purpose, negligent misrepresentation, fraud and detrimental reliance. The Georgia Action and the instant action arise from the exact same set of operative facts. The claims are almost identical except that UP did not include a permethrin claim in its counterclaim in the Georgia Action. This is of no consequence, however, because during oral argument Micro–Flo represented to the Court that it would permit UP to amend its pleading in the Georgia Action to include such a claim.[11]

## III. *Legal Analysis*

### A. *The First–Filed Rule*

 Micro–Flo seeks to dismiss the Delaware Action based upon its contention that the Georgia Action was the "first-filed." The first-filed doctrine, as set forth in *McWane Cast Iron Pipe Corp. v. McDowell–Wellman Eng. Co.*,[12] holds that the Court has the discretion to stay or dismiss an action pending before it when there "is a prior action pending elsewhere, in a court capable of doing prompt and complete justice, involving the same parties and the same issues."[13] The action pending elsewhere may be in either another state court or in federal court.[14] The first-filed rule underscores the importance of upholding a plaintiff's jurisdiction choice while simultaneously discouraging forum shopping by defendants.[15] Before the Court may dismiss or stay an action filed in Delaware on first-filed grounds, it must first analyze the particular circumstances of the case under the dual principles of comity and a plaintiff's right to select the jurisdiction in which to bring the action.[16] First, there must be a prior action pending in another jurisdiction.[17] "This simply reflects the general rule that in most cases, litigation should be confined to the jurisdiction in which it is first commenced."[18] Second, the Court is obligated to deter-

---

**11.** *Id.* at 22.

**12.** Del.Supr., 263 A.2d 281 (1970).

**13.** *McWane,* 263 A.2d at 283.

**14.** *Friedman v. Alcatel Alsthom,* Del.Ch., 752 A.2d 544 (1999).

**15.** *NRG Barriers v. Jelin,* Del.Ch., No. 15013, Steele, V.C., 1996 WL 377014 (July 1, 1996)

(Mem.Op.), *appeal refused,* Del.Supr., 682 A.2d 626 (1996).

**16.** *Id.*

**17.** *DeBari v. Nortec, Inc.,* Del.Super., C.A. No. 00C–06–025, Witham, J., 2000 WL 33108393 (Nov. 8, 2000) (ORDER).

**18.** *Id.*

mine whether the parties and issues involved are the same.[19] Finally, the Court must ascertain whether the court wherein the action was first commenced is "capable of doing prompt and complete justice."[20] The decision to dismiss on these grounds rests within the sound discretion of the Court.[21] Therefore, if the Court, after careful consideration of the issues, concludes that "the orderly and efficient administration of justice" will be better served in Delaware, it may elect to deny a motion to dismiss or stay on first-filed grounds.[22]

■ On the other hand, if the Court finds that the *instant* action was first-filed, then Micro–Flo may obtain a stay or dismissal only upon proof that the weight of the forum *non-conveniens* factors, as announced in *General Foods Corp. v. Cryo–Maid*,[23] and recently applied in *Warburg, Pincus Ventures, L.P. v. Schrapper*[24] and *Mar–Land Industrial Contractors, Inc. v. Caribbean Petroleum Refining, L.P.*,[25] militate against proceeding in Delaware.

The *Cryo–Maid* factors are:

(1) the relative ease of access to proof;

(2) the availability of compulsory process for witnesses;

(3) the possibility of the view of the premises;

(4) whether the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction;

(5) the pendency or nonpendency of a similar action or actions in another jurisdiction; and

(6) all other practical problems that would make trial of the case easy, expeditious, and inexpensive.[26]

When analyzing a motion to dismiss for forum *non-conveniens* under Delaware law, the Court must determine whether any or all of the *Cryo–Maid* factors will cause the defendant to suffer "overwhelming hardship and inconvenience if forced to litigate in Delaware."[27]

### 1. Is There a Prior Action Pending in Another Jurisdiction?

■ UP argues that the Georgia Action is not a "prior action" under *McWane* because UP filed the first lawsuit in this dispute in Delaware District Court. In essence, UP argues that the District Court of Delaware and the Superior Court for the State of Delaware should be considered one for purposes of the first-filed rule. According to UP, notwithstanding the dismissal of its original action by the District of Delaware Court and its subsequent affirmance on appeal, the action remained "alive" and could be refiled within one year of the dismissal in the Delaware Superior Court by virtue of the savings clause found in 10 *Del. C.* § 8118. To wit, at oral argument on Micro–Flo's motion to dismiss or stay, counsel for UP asserted: "And, of course, it really does revert back to the state/federal action. This case does

---

**19.** *Id.*

**20.** *Id.*

**21.** *McWane*, 263 A.2d at 283.

**22.** *NRG Barriers,* No. 15013 at 6.

**23.** Del.Supr., 198 A.2d 681 (1964).

**24.** Del.Supr., 774 A.2d 264 (2001).

**25.** Del.Supr., 777 A.2d 774 (2001).

**26.** *See Warburg, Pincus Ventures, L.P.,* 774 A.2d at 267; *see also, Ison v. E.I. duPont de Nemours & Co., Inc.,* Del.Supr., 729 A.2d 832, 837–38 (1999); *Taylor v. LSI Logic Corp.,* Del.Supr., 689 A.2d 1196, 1198–99 (1997).

**27.** *Clemence Michaud v. Fairchild Aircraft Incorporated, et al.,* Del.Super., C.A. No. 00C–06–156, Del Pesco, J., 2001 WL 1456788 (August 21, 2001) (Mem.Op.).

revert back to that, as your Honor knows, and the savings provision of 10 Delaware Code, section 8118, where you file in the forum, it's dismissed, you have a year to refile in the right forum."[28] Accordingly, UP asserts its status as the first-filed party was preserved.

By definition, as recited in *McWane*, the first-filed rule applies when a defendant seeks to stay or dismiss a Delaware action in favor of a prior filed action that is *pending* in federal or another state jurisdiction.[29] Although the District of Delaware Action was filed before the Georgia Action, it cannot, as UP argues, be considered as one with the instant action and, in any event, it was dismissed and is therefore no longer pending as required under *McWane*. It is evident from the language of the Delaware savings statute[30] that UP cannot use that statute to gain first-filed status.

> The Delaware savings statute provides:
>
> If in any action duly commenced within the time limited therefor in this chapter, the writ fails of a sufficient service or return by any unavoidable accident, or by any default or neglect of the officer to whom it is committed; or if the writ is abated, or the action otherwise avoided or defeated by the death of any party thereto, or for any matter of form ... a new action may be commenced, for the same cause of action, at any time within one year after the abatement or other determination of the original action .... [31]

The savings statute is designed to prevent dismissal of a "duly commenced" action where a party, through no fault of its own, would otherwise have its action dismissed under the technical defense of statute of limitations because "of a failure to perfect service of process within the period of limitations,"[32] or "because a careless oversight of counsel would otherwise cause the party to be denied a day in court."[33] This Court previously determined that actions dismissed for lack of jurisdiction fall within the ambit of protections provided by the savings statute as they are considered to be duly commenced yet 'avoided or defeated ... for any matter of form."[34] In *Howmet*, the Court determined, in keeping with the remedial purpose of the savings statute, that the plaintiff who timely filed an action in the United States District Court for the District of Delaware that was subsequently dismissed for lack of maritime jurisdiction was permitted to commence a *new* action in Delaware Superior Court so long as it was filed within one year from the date of the dismissal.[35] In that case, for the limited purpose of preserving the plaintiff's right to "reach a judgment on the merits"[36] instead of being dismissed as time-barred, the Court held 'that the com-

**28.** Tr. Oral Argument of Aug. 6, 2001 at 32.

**29.** *McWane*, 263 A.2d at 283 (*emphasis added*).

**30.** 10 *Del. C.* § 8118.

**31.** *Id.*

**32.** *Empire Financial Services, Inc. v. The Bank of New York*, Del.Super., No. Civ. A. 00C–09–235SCD, Del Pesco, J., 2001 WL 755936 (Jan. 12, 2001) (ORDER), *quoting Gaspero v. Doug-*

*las*, Del.Super., 1981 WL 10228, Christie, J. (Nov. 6, 1981).

**33.** *Leavy v. Saunders*, Del.Super., 319 A.2d 44 (1974).

**34.** 10 *Del. C.* § 8118(a); *Howmet Corporation v. The City of Wilmington*, Del.Super., 285 A.2d 423 (1971).

**35.** *Id.* (*emphasis added*).

**36.** *Howmet Corporation v. The City of Wilmington*, 285 A.2d at 424 *quoting Gaines v.*

mencement of a suit in the Federal District Court for Delaware is equivalent to one brought in our Superior Court, within the meaning of our Savings statute...."[37]

The Delaware District Court dismissed UP's District of Delaware Action for lack of jurisdiction because it determined the facts as alleged in the complaint did not support a finding of a claim under the Lanham Act. Thus, under *Howmet*, this dismissal triggered UP's right to commence a *new* action in Delaware Superior Court within a year of the dismissal date to "mitigate against the harshness of the defense of statute of limitations ...."[38] The *new* action, if so commenced pursuant to the savings clause, would effectively constitute a permissible *equivalent* suit, but not the *same* suit for first-filed purposes. By the time UP commenced the instant action, another virtually identical action had already been filed in Georgia. UP cannot use the savings statute to gain first-filed status because the savings statute expressly states that the second suit permitted within one year of dismissal is a "new action."[39] Having determined that there is a prior action pending in another jurisdiction (Georgia), the Court will now turn to the second prong of the *McWane* test.

## 2. *Are the Parties and Issues Involved in Both Actions the Same?*

In the Georgia Action, Micro–Flo Company sued United Phosphorous Ltd. and United Phosphorous Inc. In the instant action, United Phosphorous, Ltd. and United Phosphorous Inc. sued Micro–Flo, LLC, Micro–Flo Company and BASF. As previously noted, counsel for Micro–Flo represented that Micro–Flo, LLC, is no longer an active entity. At the time this dispute arose between the litigants, BASF was not affiliated with Micro–Flo. It was only after the alleged tortious incidents occurred that BASF acquired Micro–Flo. It is undisputed that BASF's liability, if any, attaches only under a theory of ratification.[40] Under these circumstances, it is understandable why Micro–Flo, as the plaintiff in the Georgia Action, would not include these entities in their complaint. The Court also notes that UP conceded it had the option to name BASF as a counterdefendant in the Georgia Action but it made a conscious choice to forgo the opportunity.[41] UP argues that the "presence of BASF in the Georgia litigation would destroy complete diversity between the parties and preclude the Georgia court from exercising jurisdiction over any claims asserted by UP against BASF that were 'permissive counterclaims.'"[42] At the outset of the analysis on this issue, the Court notes that it was UP's decision to remove the action from the Superior Court of Cook County, Georgia to the United States District Court for the Middle District of Georgia. Had UP maintained the action in the Georgia State Court, it could have raised any permissive counterclaims without incident. Further, to date, until Micro–Flo filed the instant motion to dismiss or stay, no mention of permissive counterclaims was ever made. In fact, a review of all of the pleadings filed to date reveals the complaint filed by UP in the

*City of New York*, 215 N.Y. 533, 109 N.E. 594 (1915).

**37.** *Howmet Corporation v. The City of Wilmington*, 285 A.2d at 424 *quoting Frombach v. Gilbert Associates, Inc.*, Del.Supr., 236 A.2d 363 (1967).

**38.** *Leavy v. Saunders*, Del.Super., 319 A.2d 44 (1974).

**39.** 10 *Del. C.* § 8118. *See also Frombach v. Gilbert Assocs., Inc.* 236 A.2d 363, 366 (1967) (construing predecessor statute).

**40.** Defs.' Mot. Dismiss at 3.

**41.** Tr. Oral Argument of Aug. 6, 2001 at 27.

**42.** Pl.s' Mem. Supp. Dismissal forum *non-conveniens* at 6.

Delaware Action mirrors the counterclaims filed in the Georgia Action but for the permethrin claim.

 A federal court with original jurisdiction over the parties before it based on a federal question can exercise supplemental jurisdiction over counterclaims not so based if they are compulsory.[43] Federal courts sitting in diversity can also exercise supplemental jurisdiction over compulsory counterclaims.[44] In addition, supplemental jurisdiction also allows for the joinder or intervention of additional parties. In particular, defendants are permitted to join non-diverse parties without destroying diversity requirements.[45] In the case *sub judice,* case law holds that not only could UP have joined BASF in the Georgia Action, its compulsory counterclaims can also be joined. UP chose to remove the Georgia Action to federal court. It cannot now complain that it is prejudiced because it cannot assert permissive counterclaims.

The alleged claims asserted by the parties arise out of the same nucleus of operative facts. Both parties agree that the claims involve disputes concerning the contractual purchase agreements of acephate and permethrin. Moreover, while it is true that UP did not include a permethrin claim in its counterclaims in the Georgia Action but did include it in its complaint in the instant action, Micro–Flo has agreed to permit UP to amend its pleading to include the permethrin counterclaim in the Georgia Action[46]. Micro–Flo has further agreed that it will not raise a Statute of Limitations defense as to those claims that was not available at the time UP filed the

District of Delaware Action. It is unimaginable to this Court that Judge Sands of the District Court for the Middle District of Georgia would refuse such an amendment under the circumstances. Thus, UP's contention that the actions involve different issues is without merit. The Devrinol claim asserted by Micro–Flo in the Georgia Action falls within the acephate dispute in that, as alleged by Micro–Flo, soon after the parties entered into an agreement regarding acephate, which terms included cost, UP raised the price in exchange for its promise to assign to Micro–Flo its rights to market Devrinol in the United States. Micro–Flo asserts that it paid the higher price but never acquired the Devrinol marketing rights. Given these allegations, it is understandable why UP decided not to include a separate "Devrinol claim" in the instant action. It is clear that the Devrinol issue is really part and parcel of the acephate dispute and the acephate dispute in Georgia and Delaware are the same.

After reviewing the complaints, the Court finds that the parties and issues in both actions are the same. Having made this determination, the Court must next analyze whether the United States District Court for the Middle District of Georgia is capable of doing prompt and complete justice.

3. *Is the United States District Court for the Middle District of Georgia Capable of Doing Prompt and Complete Justice?*

 As previously noted, discovery is already well underway in the Georgia Action and a tentative trial date has been set

**43.** *Perry v. Fine Grinding Corporation,* E.D. Pa., C.A. No. 96–6250, Bechtle, J., 1997 WL 299474 (May 30, 1997) (Mem. & ORDER).

**44.** *United Capitol Insurance Company v. Kapiloff v. United Capitol Insurance Company,* 4th Cir., 155 F.3d 488 (1998).

**45.** *Id.*

**46.** The Court notes UP could have included a counterclaim for permethrin in the Georgia Action but chose not to do so, presumably for strategic reasons.

for November 2002. Judge Sands has invested almost two years in learning about the claims and has heard at least one discovery dispute. In sharp contrast, the parties in the Delaware Action have not exchanged documents or written discovery and this Court has not set a trial date. Looking at time to trial, justice would most expeditiously be served in Georgia as opposed to Delaware.

On the substantive issues, this Court is supremely confident that the District Court for the Middle District of Georgia is fully capable of effecting complete justice. Georgia has jurisdiction over the parties. Both states have adopted essentially the same versions of the Uniform Deceptive Trade Practices Act and Uniform Trade Secrets Act and none of the issues require the application of Delaware law.

While the Court acknowledges that the situs for at least a portion of the proof may be located in India, Micro–Flo's manufacturing plant is located in Sparks, Georgia and of the 100 witnesses identified to date, 13 reside in Georgia.[47] By comparison, there are no witnesses or documents in Delaware. Discovery in the Georgia Action has progressed to the point where "UP and Micro–Flo have exchanged over 12,000 pages of documents ... and have actively negotiated the resolution of discovery disputes."[48] The only connection between the parties, the dispute and the State of Delaware lies in the fact that BASF and United Phosphorous, Inc. are incorporated here. In fact, litigating in Delaware would impose greater expense and inconvenience on the parties because none of the potential witnesses or proof is actually located here. Therefore, this Court finds that prompt and complete justice can be rendered in the United States District Court for the Middle District of Georgia.

### B. *Forum Non Conveniens*

Because the Court finds that the three prongs of *McWane* are satisfied, the Court need not reach the issue of forum *non-conveniens.*

### IV. *Conclusion*

For all of the foregoing reasons, Micro–Flo's motion to dismiss or stay is hereby **GRANTED**.

**IT IS SO ORDERED.**

---

**47.** Pl.'s Mem. Br. forum *non-conveniens* at 5, fn. 4.

**48.** Letter from Richard D. Kirk, Esq. to The Honorable Jan R. Jurden of November 20, 2001 ¶ 4.