**WARBURG, PINCUS VENTURES, L.P., Defendant Below, Appellant,**

v.

**Dietrich K.H. SCHRAPPER, M.D., Plaintiff Below, Appellee.**

No. 198, 2000.

Supreme Court of Delaware.

Submitted: April 17, 2001.
Decided: May 31, 2001.

Martin P. Tully, Esquire, and Bradley James Enna, Esquire, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware; Of Counsel: Roger Netzer, Esquire (argued), of Willkie Farr & Gallagher, New York, New York, for Appellant.

Edward M. McNally, Esquire, of Morris, James, Hitchens & Williams, LLP, Wilmington, Delaware, for Appellee.

Before VEASEY, Chief Justice, WALSH, HOLLAND, BERGER and STEELE, constituting the Court en Banc.

VEASEY, Chief Justice.

We accepted this appeal to review an interlocutory order of the Superior Court denying a motion to dismiss on the ground of *forum non conveniens*. Because the Superior Court applied the correct legal standard and did not abuse its discretion in determining that the appellant has not satisfied the overwhelming hardship standard, we affirm.

### Facts

Dr. Dietrich K.H. Schrapper, a German citizen, filed a complaint in Superior Court against Warburg, Pincus Ventures L.P. ("Warburg") on June 25, 1999. Warburg is a Delaware limited partnership. The complaint concerns negotiations, and an alleged contract, between Warburg's wholly owned U.K. subsidiary, E.M. Warburg, Pincus & Co. International Limited, and Schrapper relating to a joint venture they were to form to invest in the German healthcare industry.

According to the complaint, the parties executed a term sheet dated December 2, 1996 that committed Warburg to supply financing for the acquisition of German healthcare facilities, subject to the fulfillment of certain conditions contained in the term sheet. Schrapper alleges that these conditions were fulfilled, as were several additional conditions Warburg placed on the deal in the following months, such as requiring Schrapper to terminate employment relationships with various healthcare facilities. According to Schrapper, Warburg continued to delay closing the deal for pretextual reasons while Schrapper pressed to close. On April 3, 1997, Warburg informed Schrapper's attorneys that it did not intend to form the partnership contemplated in the term sheet.

Schrapper's complaint seeks recovery under theories of breach of contract, "tortious breach of contract," "breach of the covenant of good faith and fair dealing," "*quantum meruit*," "tortious interference with existing business relationships," "tortious interference with prospective economic advantage," "promissory estoppel,"

and "fraudulent inducement and misrepresentation." Schrapper alleges, in essence, that Warburg intentionally led Schrapper along, using confidential and proprietary information Schrapper supplied to form another venture without him. His complaint seeks damages "of at least DM 261,816,500" based on lost compensation, termination of business relationships in reliance on Warburg's alleged promises, and various other costs and damages.

All of the activities that are the basis of Schrapper's complaint occurred outside of the United States. The negotiations between the parties and their attorneys took place in Germany and England, which is also where all of the witnesses reside and where all of the evidence is located. Similarly, Schrapper's alleged damages involve interference with his relationships with various German entities. On September 9, 1999, Warburg filed a motion to dismiss on the ground of *forum non conveniens*. In support of dismissal, Warburg argues in its motion that the only connection this case has to Delaware is Warburg's status as a Delaware limited partnership, that the witnesses and evidence are all in Germany and England, and that either German law or possibly English law would apply to this action. The Superior Court denied Warburg's motion on the ground that Warburg had not established with particularity that it would face overwhelming hardship if required to litigate in Delaware.[1] We affirm the order of the Superior Court denying the motion to dismiss.

## Warburg Must Demonstrate Overwhelming Hardship

Our jurisprudence is clear that a complaint will not be dismissed on the ground of *forum non conveniens* without a showing of overwhelming hardship.[2] While this standard is not "preclusive," it requires a defendant to show that the case is "one of the rare cases where the drastic relief of dismissal is warranted based on a strong showing that the burden of litigating in this forum is so severe as to result in manifest hardship to the defendant."[3] It is well established that Delaware courts assess hardship to the defendant using the following six "*Cryo-Maid*" factors:

(1) the relative ease of access to proof;

(2) the availability of compulsory process for witnesses;

(3) the possibility of the view of the premises;

(4) whether the controversy is dependent upon application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction;

(5) the pendency or nonpendency of a similar action or actions in another jurisdiction; and

(6) all other practical problems that would make trial of the case easy, expeditious, and inexpensive.[4]

In this case, the Superior Court properly focused on whether Warburg has made a showing of overwhelming hardship

---

1. *See Schrapper v. Warburg Pincus Ventures, L.P.*, Del.Super., C.A. No. 99C–06–268 (March 30, 2000) (Letter Op.).

2. *See Ison v. DuPont de Nemours*, Del.Supr., 729 A.2d 832, 838 (1999).

3. *Id.* at 842. *See also Taylor v. LSI Logic Corp.*, Del.Supr., 689 A.2d 1196, 1197 (1997) (holding that dismissal is not warranted

where defendant "has not established with particularity on this record that it would be subjected to overwhelming hardship and inconvenience if required to litigate in Delaware").

4. *Ison*, 729 A.2d at 837–38 (*citing General Foods Corp. v. Cryo–Maid, Inc.*, Del.Supr., 198 A.2d 681, 684 (1964)).

under the *Cryo–Maid* factors. Warburg argues that the Superior Court applied an incorrect legal standard. It argues that in a case in which the plaintiff is not a Delaware citizen and the defendant's "only connection" to Delaware is its status as a Delaware business entity (in this case, a limited partnership), the overwhelming hardship standard does not apply.[5] We conclude that Delaware *forum non conveniens* law does not support this argument.

Warburg's argument relies principally on language in *Ison.* In *Ison,* the DuPont Company, a Delaware corporation with its principal place of business in Delaware, was sued in Delaware by plaintiffs from New Zealand, England, Wales, and Scotland.[6] We reversed the decision of the trial court granting the defendant's motion to dismiss on the ground of *forum non conveniens.* Although we held that Delaware was a proper forum, we stated that the presumption of deference generally accorded a plaintiff's choice of forum "is not as strong" in the case of a foreign plaintiff.[7] In addition, because the dispute in *Ison* involved witnesses and evidence in part located in Delaware, we observed that it was "not a case of weighing the foreign plaintiffs' choice of forum (whether it be 'forum shopping' or not) against a defen-

dant whose only connection is that it is incorporated in Delaware."[8]

Based on this language, Warburg argues that while it has to show hardship it does not have to meet the overwhelming hardship standard, which is generally met only in the rare case. The cases relied on by Warburg do not support a modification of the traditional showing a defendant must make in order to prevail on a motion to dismiss on the ground of *forum non conveniens.* On the contrary, in both *Ison* and *Taylor,* each of which involved foreign plaintiffs, this Court found that the motion to dismiss on the ground of *forum non conveniens* should not have been granted by the trial court because the defendant had not shown overwhelming hardship.[9]

■ The application of the overwhelming hardship standard in *Taylor* is especially pertinent because in that case, as here, the plaintiffs were foreign and the only connection to the Delaware forum was the domiciliary status of the business entity.[10] The *forum non conveniens* analysis is fact-sensitive, given "the discretionary nature of the doctrine, combined with the multifariousness of the factors relevant to its application."[11] Under our case law,

5. Alternatively, Warburg maintains that it has shown overwhelming hardship under the *Cryo–Maid* factors. We address this argument below.

6. *Ison,* 729 A.2d at 835.

7. *See id.* ("The fact that the plaintiffs are foreign nationals does not deprive them of the presumption that their choice of forum should be respected. Although that presumption is not as strong ... we need not rest our decision on that issue because of the defendant's weak showing of hardship."); *see also id.* at 839 (*citing Piper Aircraft v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)).

8. *Id.* at 842–43.

9. *See id.* at 835 (reversing the trial court and noting that it did not apply "the central criterion of Delaware Supreme Court jurisprudence: that the defendant must show overwhelming hardship if the case is to be dismissed"); *Taylor,* 689 A.2d at 1199 (holding that defendants "must establish with particularity that they will be subjected to overwhelming hardship and inconvenience if required to litigate in Delaware").

10. *See Taylor,* 689 A.2d at 1198 (summarizing facts showing that the case had no connection to Delaware other than defendant's incorporation in Delaware).

11. *See American Dredging Co. v. Miller,* 510 U.S. 443, 455, 114 S.Ct. 981, 127 L.Ed.2d 285

however, "[t]he issue is whether any or all of the *Cryo–Maid* factors establish that defendant will suffer overwhelming hardship and inconvenience if forced to litigate in Delaware."[12] We reject Warburg's argument that some lesser hardship standard applies to this case.

### Application of Overwhelming Hardship Standard to this Case

▇▇ Having concluded that the Superior Court properly required Warburg to show overwhelming hardship through the factors set forth in *Cryo–Maid,* we now review its finding that Warburg has failed to sustain its burden. A motion to stay or dismiss on the ground of *forum non conveniens* is addressed to the sound discretion of the trial court.[13] "[T]his Court must determine whether the findings and conclusions of the Superior Court are supported by the record and are the product of an orderly and logical deductive process." [14]

▇▇ Warburg's central claim of hardship involves ease of access to proof and availability of compulsory process for procuring the testimony of witnesses. Regarding compulsory process for witnesses, it is not disputed that the German witnesses are beyond the compulsory process of the Delaware courts. Warburg argues that the inability to compel live testimony from third-party German witnesses prevents effective testing of Schrapper's claims based on breach of contract and interference with third-party business relationships.

The trial court held, correctly in our view, that this argument does not support a claim of hardship. Warburg's motion to dismiss does not specify any of the witnesses that are alleged to be beyond its reach and whose absence would adversely affect Warburg's defense. In oral argument before the trial court and in its submission to this Court, Warburg has referred to two unnamed non-party witnesses, a "broker" and a "healthcare consultant," that may not be available to testify in Delaware. Warburg explains the relevance of their testimony with the vague averments that the broker "introduced [Dr. Schrapper] to Warburg" and the consultant "assisted in the negotiations." [15]

We agree with the trial court that the record fails to support the contention that the potential absence of these witnesses is sufficient to establish hardship.[16] As the

(1994). Thus, the fact that a plaintiff is not a Delaware resident may be relevant in a number of ways. For example, a foreign plaintiff may suffer less cost and prejudice from dismissal of the Delaware action than would a Delaware plaintiff who would have to refile in a jurisdiction foreign to him. *See Ison,* 729 A.2d at 845.

12. *Chrysler First Business Credit Corp. v. 1500 Locust Limited Partnership,* Del.Supr., 669 A.2d 104, 108 (1995).

13. *See Williams Gas Supply Co. v. Apache Corp.,* Del.Supr., 594 A.2d 34, 37 (1991).

14. *Id.* (*citing Levitt v. Bouvier,* Del.Supr., 287 A.2d 671, 673 (1972)).

15. *Compare Martin v. Vogler,* N.D. Ill., 1993 WL 462853, at *3, Aspen, J. (Nov. 9, 1993) (dismissing action arising from car accident in favor of German forum, citing the risk of losing *"key* liability witnesses" including "Oliver Wieselhuber (the driver of the car . . .), Dr. Lorenz (the emergency room doctor . . .), Mr. Thielcke (a police vehicle expert. . .), and Officer Willer (the Ansbach police officer who prepared the accident report)") (emphasis added).

16. *See States Marine Lines v. Domingo,* Del. Supr., 269 A.2d 223, 226 (1970) ("The defendant may not prevail on this ground because it failed to particularize sufficiently the hardship it claims in this connection. It did not name the witnesses it deemed necessary to call; or demonstrate their number; or show

trial court recognized, Warburg can obtain live testimony from witnesses under its control who were actual parties to the negotiations.[17] The difference to Warburg in travel time and expense involved in flying witnesses from England to Germany or Delaware, or from Germany to Delaware, cannot be deemed an overwhelming hardship to Warburg.[18]

Warburg is especially concerned that it will be deprived of live testimony that it needs to "rebut plaintiff's theory of damages" based on Warburg's alleged interference with Schrapper's existing and prospective business relationships. Warburg's concern is simply that the jury will hear self-serving testimony from Schrapper (and possibly others friendly to Schrapper) but will not have the opportunity to hear from witnesses who would tend to refute Schrapper's claims.

Initially, Schrapper may have the advantage of calling witnesses favorable to his position and taking the stand himself. Without compulsory process, Warburg may have some difficulty presenting rebuttal testimony. Ultimately, however, it is Schrapper who must prove damages, not Warburg. We are not persuaded that Warburg, in concert with its U.K. subsid-

iary, will be unable to counter Schrapper's anticipated litigation strategy, perhaps with German witnesses of its own. Certainly, Warburg has not demonstrated overwhelming hardship in this connection.

■ Turning to the related factor of relative ease of access to proof, the parties differ on the scope and efficacy of Hague Convention procedures for accessing evidence in Germany.[19] Warburg agrees, however, that the Hague Convention ostensibly permits a limited form of deposition. Warburg has also argued that it would be "difficult if not impossible" to obtain discovery of documents that are located in Germany, although its arguments at various phases of this litigation have placed more emphasis on the difficulty than the impossibility. Based on the authorities cited by the parties, it appears that Warburg could, as it argues, "conceivably have no pretrial discovery" if the case is litigated in Delaware, but will be able to obtain at least some evidence from Schrapper for the purposes of trial.[20] To the extent that the issues in this case involve business dealings between the parties, nothing in the record suggests that Warburg lacks much of the documentary evi-

---

their relationship to this case; or explain why their testimony could not be presented in Delaware by deposition.").

**17.** *See Ison,* 729 A.2d at 843 ("DuPont, as a party to the action, must make its current employees available for testimony...."). Warburg has not claimed any difficulties in this regard.

**18.** *Compare Martin,* 1993 WL 462853, at *3 (citing cost as a factor where parties were United States servicemen involved in a car accident in Germany).

**19.** *See* Hague Convention on Taking of Evidence Abroad in *Civil* and *Commercial* Matters, March 18, 1970, 23 U.S.T. 2555, 28 U.S.C. § 1781. This Court has recognized that Hague Convention procedures for access-

ing evidence place added burdens on parties. *See Ison,* 729 A.2d at 843 ("[T]hese circuitous routes to accessing evidence are somewhat cumbersome....").

**20.** *See Anglo American Ins. Group v. CalFed, Inc.,* S.D.N.Y., 940 F.Supp. 554, 565 n. 15 (1996) (noting that Hague Convention reservations with respect to pretrial discovery do "not affect depositions or interrogatories or the examination of documents for purposes other than pretrial discovery (i.e., for production as evidence at trial)"); *cf. General Motors v. Lopez,* E.D.Mich., 948 F.Supp. 656, 667–68 (1996) (noting that the difficulty with obtaining discovery from non-party German residents "must be weighed against the fact that broad pretrial discovery from named parties is permitted in American courts and is not permitted in German courts").

dence. We agree with the trial court's conclusion that Warburg has not demonstrated with particularity that true hardship would result if it is forced to resort to Hague Convention procedures to obtain discovery.[21]

■ The next *Cryo–Maid* factor relevant to this case[22] is "whether the controversy is dependent upon application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction."[23] It appears that foreign law governs this dispute, although the choice of law determination has not been made by the trial court at this stage of the proceedings.[24] The choice of law factor, while relevant to establishing hardship and inconvenience, primarily focuses on "Delaware's interest in the litigation," a focus evident in the phrasing of the factor itself.[25] Warburg's argument focuses on the expense and inconvenience of translating pertinent legal precedent (assuming German law applies), retaining foreign lawyers, and producing foreign law experts to testify at trial. On the record before us, we do not think the trial court erred in giving little weight to this argument in the context of the overwhelming hardship analysis.[26]

In light of this analysis, the remaining factors require little discussion. There is no pending action in Germany or elsewhere, a fact that could weigh against dismissal.[27] At best, this factor could conceivably carry little weight in the analysis if minimal "cost and prejudice" to Schrapper would result from dismissal.[28] Therefore, since Warburg has not demonstrated overwhelming hardship through the combination and weight of any or all of the other *Cryo–Maid* factors,[29] we need not consider the degree to which the non-pendency of other actions *also* counsels against dismissal in this case. Finally, Warburg has not cited any other practical problems associated with litigating in Delaware in addition to the issues discussed above.

### Conclusion

We agree with the trial court that Warburg "has not done anything more than claim inconvenience and has not supported

21. *See Taylor,* 689 A.2d at 1199 ("An action may not be dismissed upon bare allegations of inconvenience without a particularized showing of the hardships relied upon.").

22. The parties agree that this case does not involve a view of any premises.

23. *Ison,* 729 A.2d at 838 (citation omitted).

24. The Superior Court's opinion states that "Delaware law may not apply in this action," a view not challenged by either party in this appeal. Letter Op. at 3. Warburg maintains on appeal that German law will apply, although in its motion to dismiss it stated that either German or British law applies. Schrapper has not conceded that German law applies.

25. *Ison,* 729 A.2d at 843; *see generally id.* at 844. *See also Taylor,* 689 A.2d at 1200 ("It is not unusual for *courts* to wrestle with open questions of the law of sister states or foreign countries. The application of foreign law is not sufficient reason to warrant dismissal under the doctrine of forum non conveniens.") (emphasis added). *Cf. Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) (categorizing the choice of law issue as one of the "factors of *public interest*" and focusing on the difficulty the federal trial court would have "untangl[ing] problems in conflict of laws, and in law foreign to itself.") (emphasis added).

26. *See Taylor,* 689 A.2d at 1200 ("The application of foreign law is not sufficient reason to warrant dismissal under the doctrine of forum non conveniens.").

27. *See Ison,* 729 A.2d at 844–45.

28. *Id.* at 845.

29. *See Chrysler First,* 669 A.2d at 105; *Williams Gas,* 594 A.2d at 36.

this claim with anything of substance." [30] Warburg's motion to dismiss on the ground of *forum non conveniens* is based on little more than generalized references to the garden-variety concerns and expenses that characterize transnational litigation. Accordingly, we affirm the interlocutory order of the Superior Court.