# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| JOSELIN BARRERA, et al. | ) | |
| Plaintiffs, | ) ) ) ) | |
| v. | ) ) ) | C.A. No. N15C-10-118 VLM |
| MONSANTO COMPANY, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Submitted: July 13, 2016
Decided: September 13, 2016

*Upon Consideration of Defendant's Motion to Dismiss,* **DENIED.**

Raeann Warner, Esquire, Jacobs & Crumplar, P.A., Wilmington, Delaware, and Robin L. Greenwald, Esquire, and Maja Jukic, Esquire, Weitz & Luxenberg P.C., New York, New York. *Attorneys for the Plaintiffs.*

Kelly E. Farnan, Esquire, Richards, Layton & Finger, P.A., Wilmington, Delaware, and Eric G. Lasker, Esquire, and Erica Klenicki, Esquire, Hollingsworth LLP, Washington, D.C. *Attorneys for the Defendant.*

**MEDINILLA, J.**

## INTRODUCTION

On October 14, 2015, Plaintiffs Joselin Barrera, Judi Fitzgerald and Elias de la Garza filed suit in Delaware, alleging that their cancer was caused by their exposure to Defendant Monsanto Company's glyphosate pesticide, marketed under the brand name Roundup®. Defendant Monsanto Company moves to dismiss Plaintiffs' Complaint on the basis of *forum non conveniens*, or in the alternative, for failure to state a claim under Superior Court Civil Rule 12(b)(6). After consideration of the parties' briefings, oral arguments, and the last supplemental submissions received on July 13, 2016, for the reasons stated below, Defendant Monsanto Company's Motion to Dismiss is **DENIED**.

## FACTUAL AND PROCEDURAL HISTORY

Defendant Monsanto Company ("Defendant") is a multinational, agricultural biotechnology company incorporated in Delaware with its headquarters and principal place of business in St. Louis, Missouri.[1] Defendant discovered the herbicidal properties of glyphosate in 1970 and began marketing it under the brand name Roundup® in 1974.[2] Roundup® is a non-selective herbicide that is used to kill weeds by inhibiting an enzyme that is specific to plants.[3] Plaintiffs Joselin

---

[1] Compl. ¶ 2.

[2] *Id.* ¶ 1.

[3] Def.'s Opening Br. at 3.

1

Barrera, Judi Fitzgerald and Elias de la Garza ("Plaintiffs") allege that exposure to Defendant's Roundup® caused their cancer. Each has an independent story with ties to various states in our nation.

Plaintiff Barrera was born in April 1991 and currently resides in Roma, Texas. She alleges exposure to Roundup® from 1994 to 1998 during the months of June to October, in Plainwell, Michigan. Plaintiff Berrera spent months in the fields where her parents were employed as migrant farm workers because they could not afford child care. During the same time period, Plaintiff Barrera's family lived in a migrant worker house adjacent to these fields. Her mother "recalled both she and her daughter being in the vicinity of, and being sprayed with, what she believes to be Roundup®."[4] Plaintiff Barrera was diagnosed with non-Hodgkin lymphoma in November 2006.[5]

Plaintiff Fitzgerald was born in August 1951 and resides in Staunton, Virginia.[6] She alleges exposure to Roundup® from 1994 to 1998 during her employment as a Growers Assistant at N&O Horticultural Products in St. James, New York. Although Plaintiff Fitzgerald did not personally apply Roundup®, she "was present when Roundup® was sprayed both indoors and outdoors. She recalls

---

[4] Compl. ¶ 67.

[5] *Id.* ¶ 68. The Complaint does not describe where Plaintiff Barrera's diagnosis occurred.

[6] According to Plaintiffs' Memorandum opposing dismissal, Plaintiff Fitzgerald recently died. Plaintiffs intend to amend the Complaint to reflect her death. *See* Pls.' Mem. Opp'n at 4 n.1.

the Roundup® vapors inside the building and the wind drifts of Roundup® outside when applied. . . . On at least several occasions, Ms. Fitzgerald became ill within hours of being in the vicinity of the spraying of Roundup®."[7] In a complaint previously filed by Plaintiff Fitzgerald and voluntarily dismissed in the United States District Court for the Eastern District of New York, Plaintiff Fitzgerald alleged she was diagnosed with chronic lymphocytic leukemia on October 15, 2012, in New York.[8]

Plaintiff de la Garza was born in 1941 and currently resides in Pharr, Texas. He alleges that while employed as a migrant farm worker from about 1951 to 1990, he was exposed to Roundup® in the fields in Walla Walla, Washington, and in Oregon.[9] Plaintiff de la Garza also alleges exposure to Roundup® from 1990 to 2008 during his employment as a landscaper in McAllen, Texas. As a landscaper, he "used and personally applied Roundup®" and "was regularly and directly exposed to Roundup®."[10] Plaintiff de la Garza was diagnosed with non-Hodgkin lymphoma in 2008 in Texas.[11]

---

[7] Compl. ¶ 69.

[8] Def.'s Opening Br. at 6 (citing Judi Fitzgerald's E.D.N.Y. Compl. ¶¶ 66–69, Ex. 1 to Def.'s Opening Br.). *See also* Compl. ¶ 71.

[9] Compl. ¶ 72. Defendant, however, did not discover glyphosate's herbicidal properties until 1970 and did not market Roundup® until 1974. *See id.* ¶ 1.

[10] *Id.* ¶ 73.

Plaintiffs' state claims are also accompanied by a backdrop of significant federal statutory and regulatory law. The manufacture, formulation, and distribution of herbicides, such as Roundup®, are regulated under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA").[12] FIFRA requires that all pesticides be registered with the Environmental Protection Agency ("EPA") prior to their distribution, sale or use, except as described by FIFRA.[13] To apply for registration, a pesticide manufacturer must supply the required information, which includes, among other things, "a complete copy of the labeling of the pesticide, a statement of all claims to be made for it, and any directions for its use."[14] The manufacturer must also conduct the necessary health and safety testing of its pesticide and is required to provide the resulting data and any relevant studies with its application for registration.[15]

The EPA will approve the registration of a pesticide if it determines that, among other elements: "its labeling and other material required to be submitted comply with the requirements" of FIFRA; "it will perform its intended function without unreasonable adverse effects on the environment;" and "when used in

---

[11] *Id.* ¶ 74.

[12] 7 U.S.C. §§ 136-36y (2012).

[13] 7 U.S.C. § 136a(a).

[14] 7 U.S.C. § 136a(c)(1)(C).

[15] 7 U.S.C. § 136a(c)(2)–(3).

accordance with widespread and commonly recognized practice it will not generally cause unreasonable adverse effects on the environment."[16] The EPA re-evaluates pesticides through FIFRA's re-registration process[17] and manufacturers also have a "continuing obligation to adhere to FIFRA's labeling requirements."[18]

It is unlawful under FIFRA to sell or distribute a misbranded pesticide.[19] Under FIFRA, a pesticide is "misbranded" if its label: (i) contains a statement that "is false or misleading in any particular;" (ii) does not contain adequate directions for use; or (iii) omits necessary warnings or cautionary statements.[20] Although registration of a pesticide shall in no event "be construed as a defense for the commission of any offense under this subchapter," registration of a pesticide "shall be prima facie evidence that the pesticide, its labeling and packaging comply with the registration provisions of the subchapter" unless cancellation proceedings are in effect.[21]

Section 136v of FIFRA also provides that states can regulate the sale and use

---

[16] 7 U.S.C. § 136a(c)(5)(B)–(D).

[17] 7 U.S.C. § 136a–1.

[18] *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 438 (2005) (holding FIFRA did not preempt claims for defective design, defective manufacture, negligent testing, breach of express warranty, and violation of Texas Deceptive Trade Practices Act).

[19] 7 U.S.C. § 136j(a)(1)(E).

[20] 7 U.S.C. § 136(q)(1)(A), (F)–(G).

[21] 7 U.S.C. § 136a(f)(2).

of registered pesticides, "but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter."[22] Importantly, any state that does regulate the sale and use of pesticides registered under FIFRA "shall not impose or continue in effect any requirements for labeling or packaging *in addition to or different from* those required under this subchapter."[23]

On March 20, 2015, the International Agency for Research on Cancer ("IARC"), an agency of the World Health Organization ("WHO"), issued an evaluation of several herbicides, including glyphosate. The evaluation was based, in part, on studies of exposures to glyphosate in several countries around the world and it traces the health implications from exposure to glyphosate since 2001.[24] On July 29, 2015, IARC issued the formal monograph relating to glyphosate. In that monograph, the IARC Working Group provides a thorough review of the numerous studies and data relating to glyphosate exposure in humans.[25] Importantly, the IARC Working Group classified glyphosate as a Group 2A herbicide, suggesting that glyphosate is "probably carcinogenic to humans."[26] The IARC Working Group concluded that the cancers most associated with glyphosate

---

[22] 7 U.S.C. § 136v(a).

[23] 7 U.S.C. § 136v(b) (emphasis added).

[24] Compl. ¶ 4.

[25] *Id.* ¶ 5.

[26] *Id.* ¶ 6.

exposure are non-Hodgkin lymphoma and other haematopoietic cancers, including lymphocytic lymphoma/chronic lymphocytic leukemia, B-cell lymphoma, and multiple myeloma.[27]

Plaintiffs claim they did not know that exposure to Roundup® could be harmful to their health during the time periods they were allegedly exposed.[28] They allege that it was not until the IARC published its evaluation of glyphosate in March 2015 that they became aware their cancers could have been caused by their exposure to Roundup®.[29] On October 14, 2015, Plaintiffs filed a Complaint against Defendant, asserting three causes of action: (1) strict liability for design defect;[30] (2) strict liability for failure to warn;[31] and (3) negligence.[32]

Defendant filed this Motion to Dismiss and its Opening Brief on January 4, 2016, arguing for dismissal pursuant to the doctrine of *forum non conveniens* ("FNC") or, in the alternative, pursuant to Superior Court Civil Rule 12(b)(6). Plaintiffs filed their Memorandum in Opposition to Defendant's Motion on

---

[27] *Id.* (citing Kathryn Z. Guyton et al., *Carcinogenicity of Tetrachlorvinphos, Parathion, Malathion, Diazinon & Glyphosate*, 112 IARC Monographs 76, Section 5.4 (2015), *available at* http://dx.doi.org/10.1016/S1470-2045(15)70134-8).

[28] *Id.* ¶¶ 67, 70, 72–73.

[29] *Id.* ¶¶ 68, 71, 74.

[30] *See id.* ¶¶ 75–94.

[31] *See id.* ¶¶ 95–116.

[32] *See id.* ¶¶ 117–132.

February 3, 2016, and Defendant filed its Reply Brief on February 17, 2016. Beyond the pleadings, both sides have offered a flurry of supplemental authority in support of their respective positions.[33]

### Contentions of the Parties

Defendant first argues that Plaintiffs' claims should be dismissed under the doctrine of FNC in order for Plaintiffs' claims to be properly adjudicated in the respective jurisdictions of Plaintiffs' exposures, cancer diagnoses and treatment, and "where all parties have the best chance to secure testimony of key third-party witnesses and documents relating to [P]laintiffs' alleged cancer and claimed damages."[34] Defendant asserts that critical evidence is located "in Texas and to a lesser extent Oregon and Washington for Mr. de la Garza, New York for Ms.

---

[33] Much of the supplemental authority veers away from the relevant issues and procedural posture of the present case. Before oral argument on April 12, 2016, Defendant submitted *Rubio v. Monsanto Co,* 2016 WL 2653309 (C.D. Cal. Mar. 29, 2016). *Rubio,* however, addresses transfers under 28 U.S.C. § 1404(A) and does not address dismissal pursuant to FNC. Additionally, both parties submitted new authority regarding the FIFRA preemption issue. Plaintiffs submitted *Hardeman v. Monsanto Co.,* 2016 WL 1749680 (N.D. Cal. Apr. 8, 2016) (holding FIFRA did not preempt products liability action under theories of failure to warn and design defect) and *Giglio v. Monsanto Co.,* 2016 WL 1722859 (S.D. Cal. Apr. 29, 2016) (denying in part defendant's motion to dismiss claims of failure to warn and design defect, holding FIFRA did not preempt such claims). Defendant, responding to these submissions, submitted *Reckitt Benckiser, Inc. v. Jackson,* 762 F. Supp. 2d 34 (D.D.C. 2011) (finding EPA, on cross-motions for summary judgment, did not have authority under FIFRA to bring misbranding action in lieu of cancellation proceeding under FIFRA). Plaintiffs responded with still more authority on FIFRA preemption, submitting *Sheppard v. Monsanto Co.,* 2016 WL 3629074 (D. Haw. June 29, 2016) (denying motion to dismiss and finding products liability claim not preempted under FIFRA); *Mendoza v. Monsanto Co.,* 2016 WL 3648966 (E.D. Cal. July 8, 2016) (same); and *Hernandez v. Monsanto Co.,* No. CV 16-1988-DMG (Ex) (C.D. Cal. July 12, 2016).

[34] Def.'s Opening Br. at 1–2.

Fitzgerald, and Michigan and potentially Texas for Ms. Barrera," while nothing relevant is located in Delaware.[35] Defendant asserts that the courts of Texas, New York and Michigan, and perhaps also Washington and Oregon, are better equipped to address the specific and separate "legal deficiencies" in Plaintiffs' claims.[36] In response, Plaintiffs argue that Defendant fails to demonstrate that it will suffer "overwhelming hardship," evaluated under the *Cryo-Maid* factors,[37] if forced to litigate in Delaware.

In the alternative, Defendant argues that the "legal deficiencies" in Plaintiffs' claims provide additional grounds for dismissal under Rule 12(b)(6). First, Defendant argues that Plaintiffs' "failure to warn" claims are preempted by § 136v of FIFRA because they seek to impose "requirements for labeling or packaging in addition to or different from those required" by FIFRA. Plaintiffs disagree. They assert that their "failure to warn" claim actually parallels FIFRA's misbranding requirement that products contain warnings sufficient to protect the health of those exposed because Defendant had a duty to warn of Roundup®'s carcinogenic and dangerous effects.

---

[35] *Id.* at 7.

[36] *Id.* at 2.

[37] *Gen. Foods Corp. v. Cryo-Maid, Inc.*, 198 A.2d 681 (Del. 1964).

Second, Defendant argues that Plaintiffs' "design defect" claims are barred under the laws Michigan, Texas and New York because Plaintiffs have not pleaded a "safer alternative design" of glyphosate or Roundup® as required under those state laws.[38] Plaintiff responds by asserting that Missouri's substantive law applies to their claims because Defendant's principal place of business is in St. Louis; Missouri does not require that Plaintiffs plead a reasonable alternative design in a defective design claim.[39] They argue that even if Missouri law does not apply, they have adequately alleged a safer alternative design given the relatively early stage of this litigation.

Lastly, Defendant argues that Plaintiff Barrera's claims are further barred under Michigan's statute of limitations. Plaintiff Barrera asserts that her claims are not barred under either Missouri's or Delaware's statute of limitations because under Delaware's borrowing statute, the Complaint alleges facts sufficient to support the conclusion that her claim only arose after the IARC released its evaluation of glyphosate in March 2015.

As to all of Defendant's Rule 12(b)(6) arguments, Plaintiffs aver that they have sufficiently pleaded their allegations so as to provide Defendant adequate

---

[38] Defendant argues that pursuant to Delaware's "choice of law" rules, Michigan substantive law governs Plaintiff Barrera's claims, New York substantive law governs Plaintiff Fitzgerald's claims and Texas substantive law governs Plaintiff de la Garza's claims. *See* Def.'s Opening Br. at 25–29.

[39] Pls.' Mem. Opp'n at 26–32.

notice of the nature of the claims asserted against it, such that Defendant's motion for dismissal of Plaintiffs' Complaint must be denied. Having considered the respective briefing, supplemental submissions and oral arguments, the matter is ripe for review.

## FORUM NON CONVENIENS ANALYSIS

### *Standard of Review*

*Forum non conveniens* ("FNC") is a common law, judicially created doctrine; it allows courts to exert some control over a foreign plaintiff's access to our forum.[40] The decision of whether to grant dismissal under this doctrine lies within the trial court's sound discretion.[41] Under Delaware law, the Court may dismiss a complaint under FNC if the moving defendant demonstrates that it would face "overwhelming hardship" if required to defend itself in this forum.[42] Albeit stringent, the overwhelming hardship standard is not preclusive.[43] Thus, "the Court should not base its conclusion on whether it is more difficult to litigate in Delaware than in another jurisdiction, for the premise of [FNC] is whether the

---

[40] *Ison v. E.I. DuPont de Nemours & Co., Inc.*, 729 A.2d 832, 840 (Del. 1999).

[41] *Cryo-Maid, Inc.*, 198 A.2d at 684; *Williams Gas Supply Co. v. Apache Corp.*, 594 A.2d 34, 37 (Del. 1991); *Warburg, Pincus Ventures, L.P. v. Schrapper*, 774 A.2d 264, 269 (Del. 2001); *Martinez v. E.I. DuPont De Nemours & Co., Inc.*, 86 A.3d 1102, 1104 (Del. 2014), *as revised* (Mar. 4, 2014).

[42] *Chrysler First Bus. Credit Corp. v. 1500 Locust Ltd. P'ship*, 669 A.2d 104, 107 (Del. 1995); *Ison*, 729 A.2d at 835.

[43] *Martinez*, 86 A.3d at 1105.

defendant would face overwhelming hardship in a Delaware forum."[44] Moreover, "[a]n action may not be dismissed upon bare allegations of inconvenience without a particularized showing" of how the defendant would suffer overwhelming hardship.[45]

This Court is guided by our Supreme Court's decision in *Martinez v. E.I. DuPont de Nemours & Co., Inc.*[46] Where, as here, there is no prior pending action in another jurisdiction, the Court's FNC analysis must consider the six *Cryo–Maid* factors:

> (1) the relative ease of access to proof;
> (2) the availability of compulsory process for witnesses;
> (3) the possibility of the view of the premises;
> (4) whether the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction;
> (5) the pendency or nonpendency of a similar action or actions in another jurisdiction; and
> (6) all other practical problems that would make the trial of the case easy, expeditious and inexpensive.[47]

The Court must "consider the weight of [these] factors in the particular case

---

[44] *VTB Bank v. Navitron Proj. Corp.*, 2014 WL 1691250, at *7 (Del. Ch. Apr. 28, 2014) (citing *Mar-Land Indus. Contractors, Inc. v. Caribbean Petroleum Ref., L.P.*, 777 A.2d 774, 781 (Del. 2001)).

[45] *Taylor v. LSI Logic Corp.*, 689 A.2d 1196, 1199 (Del. 1997).

[46] *Martinez*, 86 A.3d at 1104 ("a defendant must meet the high burden of showing that the traditional *forum non conveniens* factors weigh so heavily that the defendant will face 'overwhelming hardship' if the lawsuit proceeds in Delaware." (citations omitted)).

[47] *Id.* (quoting *Taylor*, 689 A.2d at 1198–99) (outlining *Cryo-Maid* factors).

and determine whether any or all of them truly cause both inconvenience and hardship."[48] The Court should not tally the factors individually, but rather look to the circumstances as a whole to determine whether an overwhelming hardship is present.[49] Moreover, courts must give adequate weight "to the reality that plaintiffs who are not residents of Delaware, whose injuries did not take place in Delaware, and whose claims are not governed by Delaware law have a less substantial interest in having their claims adjudicated in Delaware."[50] Nevertheless, "[i]t is not enough that all of the *Cryo–Maid* factors may favor defendant."[51] Rather, a "plaintiff's choice of forum should not be defeated except in the rare case where the defendant establishes, through the *Cryo–Maid* factors, overwhelming hardship and inconvenience."[52]

### *Discussion*

Except that Defendant is incorporated in Delaware, it is undisputed that this case is about non-Delaware Plaintiffs alleging non-Delaware misconduct and non-Delaware exposures that they claim caused non-Delaware injuries, for which they

---

[48] *Chrysler First Bus. Credit Corp.*, 669 A.2d at 105.

[49] *VTB Bank*, 2014 WL 1691250, at *7 (Del. Ch. Apr. 28, 2014).

[50] *Martinez*, 86 A.3d at 1111 (citing *Ison*, 729 A.2d at 835; *Warbug, Pincus Ventures*, 774 A.2d at 268).

[51] *Chrysler First Bus. Credit Corp.*, 669 A.2d at 105.

[52] *Id.*

seek legal remedies under non-Delaware law. None of these factors, however, is necessarily determinative of whether Defendant will suffer "overwhelming hardship" if forced to litigate here. "Delaware courts are accustomed to deciding controversies in which the parties are non-residents of Delaware and where none of the events occurred in Delaware. . . . [Those] factors alone are not sufficient to warrant interference with the plaintiff's choice of forum."[53]

Contrary to Defendant's assertion, the burden is not on Plaintiffs to establish that Delaware is an "appropriate forum for their claims,"[54] but rather is on Defendant to establish it would suffer overwhelming hardship if forced to litigate this matter in Delaware. To make this determination, the Court applies the six *Cryo-Maid* factors.

## 1. Relative Ease of Access to Proof

It is undisputed that Plaintiffs' claims largely depend on evidence and proof located outside Delaware. This includes evidence addressing their alleged exposures, injuries, diagnoses and treatments, as well as evidence related to Defendant's development and testing of Roundup® and documents relating to its regulatory approval applications. Evidence related to Plaintiffs will be located in Michigan, New York and Texas, yet some of the information related to Defendant

---

[53] *Taylor*, 689 A.2d at 1200.

[54] Def.'s Opening Br. at 7; Def.'s Reply Br. at 2–3.

will already be in Defendant's possession at its corporate offices in St. Louis, Missouri, or possibly here in Delaware. Accordingly, "[s]ome marginal inconvenience [] normally would arise if documents had to be brought to Delaware."[55] But in this day and age, Plaintiffs' medical records and other documents pertaining to their diagnoses are or can be made available electronically. "[T]he potential inconvenience of having to transport documents is slight because . . . '[m]odern methods of information transfer render concerns about transmission of documents virtually irrelevant.'"[56]

Likewise, "modern methods of transportation lessen the Court's concern about the travel of witnesses" who do not live in Delaware,[57] including Plaintiffs' treating doctors and experts. Although the out-of-state witnesses may experience some inconvenience if called to Delaware to testify in this matter, there is also no one single forum that will be convenient for all the likely witnesses, who are scattered throughout the country.[58]

As such, this Court finds that Defendant overstates the burden of obtaining evidence necessary to prepare a defense in Delaware.[59] Defendant has not

---

[55] *Rapoport v. Litig. Trust of MDIP, Inc.*, 2005 WL 5755438, at *5 (Del. Ch. Nov. 23, 2005).

[56] *Id.* (quoting *Asten v. Wangner*, 1997 WL 634330, at *3 (Del. Ch. Oct. 3, 1997)).

[57] *Rapoport*, 2005 WL 5755438, at *5.

[58] *Id.*

identified with any particularity the specific pieces of evidence necessary to its defense that it will be unable to produce in Delaware, and has not specifically identified any witnesses it will likely call at trial.[60] "Indeed, there has been no showing that [Defendant] will not be able to produce in Delaware witnesses important to its case, nor has it explained why testimony of potentially unavailable witnesses could not be presented by deposition."[61] Moreover, Defendant ignores the reality that out-of-state third party discovery will be necessary regardless of where this case is ultimately litigated.[62] Even if most of the burden under the first *Cryo-Maid* factor fell to Defendant, it does not weigh in favor of dismissal.[63]

## 2. Availability of Compulsory Process for Witnesses

The second *Cryo-Maid* factor is closely related to the first. Defendant correctly notes that this Court does not have the power to compel the testimony at trial of third-party witnesses who likely have knowledge regarding Plaintiffs' diagnoses, treatments and exposures but are located in other states. However, this Court does have the ability to issue a commission authorizing a party to seek such

---

[59] *1 Oak Private Equity Venture Capital Ltd. v. Twitter, Inc.*, 2015 WL 7776758, at *8 (Del. Super. Nov. 20, 2015), *appeal refused*, 130 A.3d 341 (Del. 2016).

[60] *Mar-Land*, 777 A.2d at 781.

[61] *Id.*

[62] *Ison*, 729 A.2d at 843.

[63] *See id.*

16

relief from the Clerk of the appropriate state's court.[64] At this juncture, Defendant does not identify with any specificity why relevant documents could not be obtained through this commission process. Defendant likewise has not identified with specificity any witnesses necessary for its defense that would be less cooperative if they were called to this forum.[65] Furthermore, although there is a preference to "live testimony" as opposed to "video testimony," this preference is not determinative of whether Defendant will suffer overwhelming hardship given Delaware's broad discovery procedures.[66]

Importantly, although the third-party witnesses are located in states where Plaintiffs were allegedly exposed, diagnosed and treated, none of Defendant's witnesses will be located in those states. These witnesses include Defendant's employees with knowledge of Roundup's® development, testing and marketing, who will likely be in Defendant's headquarters and principal place of business in Missouri. This does not demonstrate Defendant will suffer overwhelming hardship if forced to litigate here.[67] As such, the second *Cryo-Maid* factor does not weigh in

---

[64] *See* Del. Const., Art. IV, § 16. *See also, e.g., In re Inergy, L.P. Unitholder Litigation*, 2010 WL 4919379 (Del. Ch. Dec. 2, 2010).

[65] *Candlewood Timber Grp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 1001 (Del. 2004).

[66] *Mozeik v. Seramone & Sons Home Improvements, Inc.*, 2015 WL 1912724, at *3 (Del. Super. Apr. 28, 2015).

[67] *Ison*, 729 A.2d 843.

17

favor of dismissal.

### 3. Possibility of Viewing the Premises

To the extent that it is important, the relevant premises in this matter include farms in Michigan, Washington and Oregon, landscape properties in Texas, and a horticultural center in New York. The parties concede that a view of the premises will not be particularly relevant in this matter,[68] given the passage of time and the reality that the locations where Plaintiffs were exposed may have changed in the last two decades. The relevant premises, therefore, could be viewed and inspected through video and other technological mechanisms.[69]

The parties tepidly dispute the significance of a Delaware jury's lack of familiarity with the out-of-state locations in question.[70] Though a jury's lack of familiarity with "the physical locations of the farms at issue may have [] legitimate bearing on [Plaintiffs'] allegations,"[71] this surely carries less weight where the Defendant concedes it may not have any need to inspect the locations for purposes

---

[68] Def.'s Opening Br. at 14; Pls.' Mem. Opp'n at 10.

[69] *See Candlewood*, 859 A.2d at 1002 ("Neither [defendant] nor the [trial court] cited any case in which forced reliance on video or other visual aids, in lieu of a personal inspection, was found to constitute a hardship."); *Mozeik*, 2015 WL 1912724, at *3 (noting juries often "consider photographs, videos, and other evidence instead of traveling to the situs of an alleged tort or contract dispute. A live jury view of the premises, in fact, would be highly unusual." (footnote omitted)).

[70] *See* Pls.' Mem. Opp'n at 10-11; Def.'s Opening Br. at 13-14; Def.'s Reply Br. at 7.

[71] *Hupan v. Alliance One Int'l, Inc.*, 2015 WL 7776659, at *6 (Del. Super. Nov. 30, 2015).

of its defense.[72] Thus, the third *Cryo-Maid* factor weighs in favor of Plaintiffs as little, if any, burden will be borne by Defendant.

### 4. Whether Controversy is Dependent on Application of Delaware Law

Although choice of law issues have not been addressed, neither party argues that Delaware substantive law will apply. However, choice of law analyses that lead us to apply the laws of another jurisdiction happen routinely in this Court. As such, this Court is well-equipped to apply the laws of other states, as it does so regularly (e.g., this Court's monthly asbestos calendar). Even if there is a determination that Delaware law does not apply, "this finding alone would [be] insufficient for dismissal on the ground of [FNC]."[73] Furthermore, "[i]t is not unusual for courts to wrestle with open questions of the law of sister states . . . [and is] not sufficient reason to warrant dismissal under the doctrine of [FNC]."[74] Accordingly, the fourth *Cryo-Maid* factor does not weigh in favor of dismissal.

### 5. Pendency or Nonpendency of Similar Action(s) in Another Jurisdiction

There is no currently pending litigation in another jurisdiction. "[J]udicial discretion is to be exercised sparingly where, as here, there is no prior action

---

[72] *See* Def.'s Opening Br. at 14. *Cf. Hupan*, 2015 WL 7776659, at *6 (distinguishing *Martinez*, where Court found no need to inspect physical locations).

[73] *Ison*, 729 A.2d at 844. *See also VTB Bank*, 2014 WL 1691250, at *10.

[74] *Taylor*, 689 A.2d at 1200 (Del. 1997) (footnote omitted).

pending elsewhere."[75] As dismissal would require Plaintiffs to start an entirely new action and subject them to consequent delay, expense and inconvenience, even at this relatively early stage of litigation,[76] the fifth *Cryo-Maid* factor does not weigh in favor of dismissal.

### 6. Other Practical Problems

Under the sixth *Cryo-Maid* factor, courts are permitted, but not required, to "weigh the efficient administration of justice and analogous considerations."[77] While a determination that it might be "extraordinarily expensive and cumbersome for a defendant to litigate a case in Delaware," such that dismissal based on FNC is warranted, "[t]his public interest factor will seldom, in isolation, be dispositive of whether dismissal on the grounds of [FNC] is warranted."[78]

Plaintiffs concede and this Court acknowledges that the only connection this matter has to Delaware is that Defendant is incorporated here. Defendant urges this Court to consider the "public interest concerns of other states with respect to non-Delaware plaintiffs and non-Delaware alleged misconduct and injury"[79] and

---

[75] *Id.* at 1199.

[76] *See Ison*, 729 A.2d at 845; *Pipal Tech Ventures Private Ltd. v. MoEngage, Inc.*, 2015 WL 9257869, at *9 (Del. Ch. Dec. 17, 2015).

[77] *Martinez v. E.I. DuPont De Nemours & Co., Inc.*, 86 A.3d 1102, 1112–13 (Del. 2014), *as revised* (Mar. 4, 2014).

[78] *Id.* at 1113.

that this matter will require jurors and this Court to spend valuable time on a case in which our State has no interest.[80] But Delaware does have an interest in regulating the conduct of entities incorporated under our State's laws.[81] Moreover, "'the traditional showing a defendant must make in order to prevail on a motion to dismiss on the ground of [FNC] is not varied where a dispute's only connection to Delaware is the fact that the defendant is a Delaware entity."[82]

Although a non-resident plaintiff's choice of forum is afforded less deference than if they were a resident of this State,[83] it does not follow that all suits brought by non-resident plaintiffs will subject a defendant to overwhelming hardship simply because the defendant is incorporated in Delaware. Specifically, "the [FNC] analysis is not altered where the only connection to Delaware is the defendant's status as a Delaware entity."[84] While this factor tilts in favor of

---

[79] Def.'s Opening Br. at 10.

[80] *Id.* at 17.

[81] *Candlewood*, 859 A.2d at 1000; *Mozeik*, 2015 WL 1912724, at *4.

[82] *Mar-Land*, 777 A.2d at 780 (quoting *Warburg*, 774 A.2d at 268).

[83] *Martinez*, 86 A.3d at 1111 (citing *Ison*, 729 A.2d at 835; *Warbug, Pincus Ventures*, 774 A.2d at 268).

[84] *Mar-Land*, 777 A.2d at 779. *See also Warburg*, 774 A.2d 264, 268–69 ("[H]ere, the plaintiffs were foreign and the only connection to the Delaware forum was the domiciliary status of the business entity. ... Under our case law, however, '[t]he issue is whether any or all of the *Cryo-Maid* factors establish that defendant will suffer overwhelming hardship and inconvenience if forced to litigate in Delaware.' We reject [defendant's] argument that some lesser hardship standard applies to this case." (footnotes omitted)); *Ison*, 729 A.2d at 842–43.

Defendant, this alone, is insufficient to establish a burden under the sixth *Cryo-Maid* factor. As such, it does not weigh in favor of dismissal.

It may be true that there are more appropriate or convenient forums to litigate Plaintiffs' claims. Yet to prevail on this FNC motion to dismiss, Defendant is nonetheless required to demonstrate with particularity that this is "one of those rare cases where the drastic relief of dismissal is warranted" because Defendant will suffer overwhelming hardship if forced to litigate here.[85] Defendant has not demonstrated that this is one of those rare cases.

Defendant asks this Court to follow the rulings of *Martinez*[86] and *Hupan*.[87] Unquestionably, this case is not *Martinez* and it is certainly not *Hupan*. While this Court recognizes that there will be cases less extreme and obvious than *Hupan* and *Martinez* that may warrant dismissal based on FNC, this is simply not one of them. In *Martinez* and *Hupan*, the moving defendants would have been required to compel production of documents and witnesses in Argentina and review all

---

[85] *Mar-Land*, 777 A.2d at 779 ("[W]hether an alternative forum would be more convenient for the litigation, or perhaps a better location, is irrelevant. ... Rather, the trial court must focus on whether the defendant has demonstrated with particularity, through the *Cryo-Maid* factors, that litigating in Delaware would result in an overwhelming hardship to it." (citations omitted)). *See also Chrysler First Bus. Credit Corp.*, 669 A.2d at 108 ("The issue is whether any or all of the *Cryo–Maid* factors establish that defendant will suffer overwhelming hardship and inconvenience if forced to litigate in Delaware.").

[86] 82 A.3d 1 (Del. Super. 2012), *aff'd,* 86 A.3d 1102 (Del. 2014), *as revised* (Mar. 4, 2014).

[87] 2015 WL 7776659 (Del. Super. Nov. 30, 2015).

necessary evidence in another language.[88] Unlike *Hupan* and *Martinez*, most if not all of the relevant evidence in this matter will be in English and located in the United States.

Importantly, *Hupan* involved issues which would have required this Court to interpret the Argentine Civil Code in order to resolve legal disputes. Not only were the issues in *Hupan* dependent on application of the Argentine Civil Code, the law—and interpretation thereof—is set forth in Spanish.[89] Similar obstacles were present in *Martinez* as well.[90] Here, however, all the relevant documentation and legal standards are in English, and as previously noted, this Court routinely applies the laws of its sister states in its current asbestos caseload. Also, in both *Hupan* and *Martinez*, Argentine entities which may have borne direct responsibility for plaintiffs' injuries were not subject to suit in Delaware.[91] Unlike *Hupan* and *Martinez*, only Defendant Monsanto Company is alleged to have

---

[88] *Hupan*, 2015 WL 7776659, at *5–*6; *Martinez*, 82 A.3d at 29–32.

[89] *Hupan*, 2015 WL 7776659, at *7–*8.

[90] *Martinez v. E.I. DuPont De Nemours & Co., Inc.*, 86 A.3d 1102, 1106–08, 1111 (Del. 2014), *as revised* (Mar. 4, 2014).

[91] *Hupan*, 2015 WL 7776659, at *9 ("[L]itigating this suit in Delaware may circumvent corporate separateness and omit parties who may bear direct or indirect responsibility for the alleged harm in this case. This Court agrees that the presence of essential actors in another forum, and the inability to join them in these proceedings, is a factor that favors dismissal."); *Martinez*, 82 A.3d at 33 ("Delaware—[defendant's] State of incorporation—has no rational connection to the cause of action in this case and is clearly being used as a subterfuge to avoid suing the decedent's actual Argentine employer, who should be named as the defendant herein.").

caused Plaintiffs' injuries.[92]

This Court recognizes that under certain circumstances, a defendant's incorporation in this State may not be enough to overcome the fact that the defendant will also suffer overwhelming hardship if forced to litigate here. Such was the case in *Hupan*, where most of the *Cryo-Maid* factors weighed heavily in favor of dismissal and there were other aforementioned distinguishing considerations in that case.[93] *Martinez* presented a similar situation to that in *Hupan*.[94] Here, however, most if not all of the *Cryo-Maid* factors weigh *against* dismissal. Under such circumstances, even if Defendant's incorporation in this State is the matter's only true connection to Delaware, this alone does not demonstrate "overwhelming hardship." After considering all of the *Cryo-Maid* factors, this Court finds that Defendant fails to demonstrate it would face overwhelming hardship if forced to litigate in Delaware. Therefore, dismissal based on FNC is not appropriate.

## RULE 12(b)(6) ANALYSIS

### *Standard of Review*

For purposes of a motion to dismiss for failure to state a claim under

---

[92] *See generally* Compl. *See also* Pls.' Mem. Opp'n at 14.

[93] *Hupan*, 2015 WL 7776659, at *9–*10.

[94] *Martinez v. E.I. DuPont De Nemours & Co., Inc.*, 82 A.3d 1, 14, 33, 36, 38 (Del. Super. 2012); *Martinez*, 86 A.3d at 1108–09.

24

Superior Court Civil Rule 12(b)(6), all well-pleaded allegations in the complaint must be accepted as true.[95] Because even vague allegations are considered well-pleaded if they give the opposing party notice of a claim,[96] "a complaint may not be dismissed for failure to state a claim upon which relief can be granted if it gives general notice as to the nature of the claim asserted against the defendant."[97]

In deciding a motion to dismiss under Rule 12(b)(6), the Court must draw all reasonable inferences in favor of the non-moving party;[98] however, it will not "accept conclusory allegations unsupported by specific facts," nor will it "draw unreasonable inferences in favor of the non-moving party."[99] Dismissal of a complaint under Rule 12(b)(6) must be denied if the plaintiff could recover under "any reasonably conceivable set of circumstances susceptible of proof under the complaint."[100] Dismissal may only be granted if it appears to a certainty that under no set of facts that could be proved to support the claim asserted would the plaintiff be entitled to relief.[101]

---

[95] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

[96] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[97] *Diamond State Tel. Co. v. Univ. of Del.*, 269 A.2d 52, 58 (Del. 1970).

[98] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d at 168.

[99] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011) (citation omitted).

[100] *Spence*, 396 A.2d at 968 (citing *Klein v. Sunbeam Corp.*, 94 A.2d 385 (Del. 1952)).

### *Discussion*

Defendant alternatively moves for dismissal under Rule 12(b)(6) and argues that Plaintiffs' "failure to warn" claims are preempted by FIFRA, Plaintiffs' "design defect" claims fail because they do not plead a "safer alternative design" as required by the laws of Michigan, New York or Texas, and Plaintiff Barrera's claims are barred by Michigan's statute of limitations.[102] This Court disagrees. Drawing all reasonable inferences in favor of Plaintiffs, it cannot be said that under no conceivable set of facts would Plaintiffs be entitled to relief. The Complaint sufficiently provides Defendant with more than the required "general notice as to the nature of the claim asserted against" it.[103]

Importantly, the validity of Defendant's arguments concerning Plaintiffs' purported failure to plead a "safer alternative design" and whether Plaintiff Barrera's claims are precluded by Michigan's statute of limitations necessarily depends on a determination of the substantive law that will apply here. The parties have identified Michigan, New York, Texas and Missouri as jurisdictions that may prove relevant in the choice of law determination, but additional information to

---

[101] *Klein*, 94 A.2d at 391 (Del. 1952).

[102] Defendant argues that pursuant to Delaware's "choice of law" rules, Michigan substantive law governs Plaintiff Barrera's claims, New York substantive law governs Plaintiff Fitzgerald's claims and Texas substantive law governs Plaintiff de la Garza's claims. *See* Def.'s Opening Br. at 25–29. Plaintiffs argue that Missouri substantive law governs all of their claims and supplies the applicable statute of limitations period. Pls.' Mem. Opp'n at 26–32.

[103] *Diamond State Tel. Co.*, 269 A.2d at 58.

properly conduct a "choice of law" analysis is required. Although the presumption favoring the place of injury is strong, it is not necessarily decisive.[104] To date, the choice of law analysis has not been conducted and cannot be made on the limited facts and minimal record before it.[105]

Defendant's FIFRA argument is further premature to the extent that a FIFRA preemption determination is, like Defendant's other two Rule 12(b)(6) arguments, contingent on a choice of law determination. In *Bates v. Dow Agrosciences LLC*—relied upon by both sides—the United States Supreme Court interpreted the scope of FIFRA preemption narrowly to only bar *state law actions* if they would impose requirements that are in addition to or different from those required by FIFRA; state-law labeling requirements are not preempted by § 136v(b) "if it is equivalent to, and fully consistent with, FIFRA's misbranding provisions."[106] Yet in *Bates* and all the supplemental cases submitted in this matter, the respective courts had already determined which State's substantive law would apply, which enabled those courts to undertake the appropriate analysis of

---

[104] *Pena v. Cooper Tire & Rubber Co., Inc.*, 2010 WL 1511709, at *2 (Del. Super. Apr. 15, 2010), *on reargument*, 2010 WL 11199281 (Del. Super. June 9, 2010).

[105] *See Integral Res. (PVT) Ltd. v. Istil Grp., Inc.*, 2004 WL 2758672, at *2 (D. Del. Dec. 2, 2004) (noting that the court had declined to rule on a 12(b)(6) motion "because the factual record on the choice-of-law issue was not yet fully developed."), *aff'd*, 155 F. App'x 69 (3d Cir. 2005).

[106] 544 U.S. 431, 446–47, 452 (2005) (holding state law "need not explicitly incorporate FIFRA's standards as an element of a cause of action in order to survive pre-emption.").

27

whether the plaintiffs' claims in those cases were preempted by FIFRA.[107] At this juncture, this Court will not dive into the minutia of FIFRA, the EPA's classifications of glyphosate, and what effect, if any, past statements from EPA representatives may have on the issues before this Court.[108]

Drawing all reasonable inferences in favor of Plaintiffs and accepting all well-pleaded facts as true, this Court finds that Plaintiffs' Complaint gives sufficient general notice to Defendant as to the nature of the claims asserted against it. Defendant fails to meet its burden of demonstrating to a certainty that under no set of facts that could be proved to support the claims asserted would Plaintiffs be entitled to relief.[109] Therefore, dismissal of this matter based on Plaintiffs' failure to state a claim is not warranted.

## CONCLUSION

Under the doctrine of *forum non conveniens,* Defendant fails to satisfy its burden of demonstrating that it would suffer overwhelming hardship if forced to litigate this matter in Delaware. Under Rule 12(b)(6), Defendant further fails to

---

[107] *Id.* (evaluating whether FIFRA preempts plaintiffs' claims brought under Texas law). *See also Sheppard,* 2016 WL 3629074 (evaluating whether FIFRA preempts plaintiffs' claims brought under Hawaii law); *Hardeman,* 2016 WL 1749680 (evaluating whether FIFRA preempts plaintiffs' claims brought under California law); *Giglio,* 2016 WL 1722859 (same); *Mendoza,* 2016 WL 3648966 (same); *Hernandez,* No. CV 16-1988-DMG (Ex) (same).

[108] *Giglio,* 2016 WL 1722859, at *3 (holding plaintiff's claims regarding failure to warn public or consumers about risks of using Roundup not preempted by FIFRA, although plaintiff's claims regarding failure to warn EPA were preempted by FIFRA).

[109] *Klein,* 94 A.2d at 391.

28

demonstrate to certainty that under no conceivable set of facts capable of proof would Plaintiffs be entitled to relief. For the reasons stated, Defendant Monsanto Company's Motion to Dismiss is **DENIED**.

        **IT IS SO ORDERED.**

_____
Judge Vivian L. Medinilla

oc:    Prothonotary

cc:    All Counsel on Record (via e-filing)