# IN THE SUPREME COURT OF THE STATE OF DELAWARE

_____

| | | |
|---|---|---|
| Alfredo Aranda, *et al*., | § | |
| | § | No. 525, 2016 |
|     Plaintiffs Below, Appellants, | § | |
| | § | Court Below:  Superior Court |
|     v. | § | of the State of Delaware |
| | § | |
| Philip Morris USA Inc. and Philip | § | C.A. No. N13C-03-068 |
| Morris Global Brands, Inc., | § | |
| | § | |
|     Defendants Below, Appellees, | § | |

_____

| | | |
|---|---|---|
| Antonio Emilo Hupan, *et al*., | § | |
| | § | No. 526, 2016 |
|     Plaintiffs Below, Appellants, | § | |
| | § | Court Below:  Superior Court |
|     v. | § | of the State of Delaware |
| | § | |
| Philip Morris USA Inc. and Philip | § | C.A. No. N12C-02-171 |
| Morris Global Brands, Inc., | § | |
| | § | |
|     Defendants Below, Appellees, | § | |

_____

| | | |
|---|---|---|
| Maria Noemi Biglia, *et al*., | § | |
| | § | No. 527, 2016 |
|     Plaintiffs Below, Appellants, | § | |
| | § | Court Below:  Superior Court |
|     v. | § | of the State of Delaware |
| | § | |
| Philip Morris USA Inc. and Philip | § | C.A. No. N14C-01-021 |
| Morris Global Brands, Inc., | § | |
| | § | |
|     Defendants Below, Appellees, | § | |

_____

| | | |
|---|---|---|
| Pabla Chalanuk, *et al.*, | § | |
| | § | No. 528, 2016 |
| Plaintiffs Below, Appellants, | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| Philip Morris USA Inc. and Philip | § | C.A. No. N12C-04-042 |
| Morris Global Brands, Inc., | § | |
| | § | |
| Defendants Below, Appellees, | § | |

| | | |
|---|---|---|
| Clarisa Rodriguez da Silva, *et al.*, | § | |
| | § | No. 529, 2016 |
| Plaintiffs Below, Appellants, | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| Philip Morris USA Inc. and Philip | § | C.A. No. N12C-10-236 |
| Morris Global Brands, Inc., | § | |
| | § | |
| Defendants Below, Appellees, | § | |

| | | |
|---|---|---|
| Ondina Taborda, *et al.*, | § | |
| | § | No. 530, 2016 |
| Plaintiffs Below, Appellants, | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| Philip Morris USA Inc. and Philip | § | C.A. No. N13C-08-092 |
| Morris Global Brands, Inc., | § | |
| | § | |
| Defendants Below, Appellees. | § | |

Submitted: January 10, 2018
Decided: March 22, 2018

Before **STRINE**, Chief Justice; **VALIHURA**, **VAUGHN**, **SEITZ**, and **TRAYNOR**, Justices, constituting the Court *en Banc*.

Upon appeal from the Superior Court. **AFFIRMED**.

Ian Connor Bifferato, Esquire, Richard S. Gebelein, Esquire and Thomas F. Driscoll III, Esquire, The Bifferato Firm, Wilmington, Delaware; Charles S. Siegel, Esquire (*argued*), Waters & Kraus, LLP, Dallas, Texas; Steven J. Phillips, Esquire, Phillips & Paolicelli, LLP, New York, New York and the Thornton Law Firm, Boston, Massachusetts for the Plaintiffs Below, Appellants.

P. Clarkson Collins, Jr., Esquire and David J. Soldo, Esquire, Morris James LLP, Wilmington, Delaware; Patrick W. Dennis, Esquire (*argued*), Perlette Michèle Jura, Esquire, Gibson, Dunn & Crutcher LLP, Los Angeles, California; Miguel A. Estrada, Esquire and Amir C. Tayrani, Esquire, Gibson, Dunn & Crutcher LLP, Washington, D.C. for the Defendant Below, Appellee Philip Morris USA Inc.

Donald E. Reid, Esquire, Morris Nichols Arsht & Tunnell LLP, Wilmington, Delaware; Matthew S. Hellman, Esquire (*argued*), Jenner & Block LLP, Washington, D.C.; Elizabeth A. Coleman, Esquire and Casey T. Grabenstein, Esquire, Jenner & Block LLP, Chicago, Illinois for Defendant Below, Appellee Philip Morris Global Brands, Inc.

**SEITZ**, Justice, for the Majority:

In these consolidated appeals we consider a single legal issue—whether the trial court must first determine that an available alternative forum exists before dismissing a case for *forum non conveniens*. We hold that an available alternative forum should be considered as part of the *forum non conveniens* analysis, but is not a threshold requirement. Because the Superior Court considered the availability of an alternative forum as a factor in its *forum non conveniens* analysis, we affirm.

I.

According to the allegations of the complaint, the plaintiffs are adult and minor Argentinean citizens.[1] The defendants, Philip Morris USA Inc. ("PM USA") and Philip Morris Global Brands, Inc. ("PM Global"), own Massalin Particulares, S.A., a tobacco production company. In 1984, Massalin created a brokerage company, Tabacos Nortes, to purchase tobacco from small, family-owned farms in Misiones, Argentina. The plaintiffs own and live on these farms, raising livestock

---

[1] Fifteen Argentinean parents and their eight minor children filed the first case, captioned *Hupan, et al. v. All. One Int'l Inc., et al.*, C.A. No. 12-C-02-171 VLM, against thirteen separate U.S. and foreign corporations. Five more complaints were later filed on behalf of an additional 383 Argentinean citizens against the same defendants. *Aranda v. All. One Int'l Inc., et al.*, No. N13C-03-068 VLM; *Biglia v. All. One Int'l Inc., et al.*, No. 14C-01-021 VLM; *Chalanuk v. All. One Int'l Inc., et al.*, No. N12C-04-042 VLM; *Da Silva v. All. One Int'l Inc., et al.*, No. N12C-10-236 VLM; *Taborda v. All. One Int'l Inc., et al.*, No. N13C-08-092 VLM. The plaintiffs agreed to a voluntary dismissal of ten defendants from all six cases for lack of personal jurisdiction, leaving PM USA, PM Global, and Monsanto as defendants. The parties then agreed to stay all cases except *Hupan*, pending resolution of choice of law issues and the motions to dismiss. Monsanto is not a party to this appeal.

4

and growing produce for their own consumption adjacent to the tobacco plants. Tabacos Nortes requires the farmers to purchase and use herbicides and pesticides, which it sells to the farmers on credit. Monsanto Company developed, marketed, and supplied a herbicide, called "Roundup," which, according to the complaint, contains chemical ingredients and toxins capable of causing "genetic, teratogenic, and/or developmental injury to humans."[2] The plaintiffs mixed chemicals like Roundup and sprayed the tobacco crops by hand with chemicals from containers on their backs. As alleged in the complaint, the defendants knew that the plaintiffs' personal crops, livestock, and water would be contaminated with the herbicides and pesticides. The plaintiffs further allege that the defendants never recommended protective measures, but knew the plaintiffs lacked protective equipment and the knowledge required for safe use of the chemicals.

The plaintiffs claim the defendants "willfully and recklessly ignored knowledge . . . of the health hazards" of the herbicides and pesticides and "exhibited reckless disregard for the health and well-being" of the plaintiffs.[3] The plaintiffs also alleged that PM USA and PM Global, in particular, "controlled and managed the tobacco production enterprise of Massalin Particulares and Tabacos Nortes to

---

[2] App. to Opening Br. at 138 (Compl., *Hupan*, No. N12C-02-171, at ¶¶ 103–04).
[3] *Id.* at 143 (Compl. ¶ 134). The parties agreed that Argentine law would govern substantive issues, but disagreed as to whether it would apply to negligence claims and punitive damages. *Hupan v. Philip Morris USA Inc.*, et al. 2015 WL 7776659, at *3 (Del. Super. Nov. 30, 2015).

ensure that the tobacco produced in Argentina was sufficient for its American products."[4]

The Superior Court granted PM USA's and PM Global's motion to dismiss the complaint for *forum non conveniens*, finding that those defendants would face overwhelming hardship if forced to litigate in Delaware.[5] Following the dismissal, the plaintiffs filed a motion under Rule 59 for clarification or, alternatively, reargument. In the motion, the plaintiffs did not challenge the Superior Court's conclusion that PM USA and PM Global would face overwhelming hardship if they were forced to litigate in Delaware. Instead, the plaintiffs argued that "[a]s a matter of logic and precedent, a threshold requirement is that the moving defendant be amenable to suit in the suggested foreign forum"—in this case, Argentina.[6] To ensure the availability of Argentina as an alternative forum, the plaintiffs asked the court, as part of its dismissal, to: (1) order the defendants to waive any defense regarding subject matter jurisdiction, personal jurisdiction, service of process, laches, and the statute of limitations; (2) order the defendants to satisfy any judgment rendered against them in Argentina; (3) grant the plaintiffs a reasonable time to

---

[4] App. to Opening Br. at 128 (Compl. ¶ 52).
[5] *Hupan*, 2015 WL 7776659, at *10. Monsanto did not join PM USA's and PM Global's motion to dismiss for *forum non conveniens*.
[6] App. to Opening Br. at 493 (Mot. for Clarification or Rearg., at 2, *Hupan v. All. One Int'l Inc., et al.*, 2016 WL 4502304 (Del. Super. Dec. 7, 2015)).

conduct discovery; and (4) allow the plaintiffs to reinstate their claims in Delaware if the courts in Argentina declined to hear the case.[7]

The Superior Court denied the reargument motion. First, the court held that an available alternative forum is not required because Delaware's *forum non conveniens* analysis focuses on the hardship a defendant faces in this jurisdiction—not whether the defendant is amenable to suit somewhere else.[8] Further, the court noted within its analysis that it considered Argentina an available alternative forum.

As for the plaintiffs' requested conditions to dismissal, the court found the requests untimely because they should have been raised in their original motion and not in a Rule 59 motion for reargument.[9] The court also held that, even if plaintiffs had properly raised their request, those conditions were "not logically implicated in an analysis focusing on a moving defendant's overwhelming hardship."[10]

## II.

The plaintiffs appeal the Superior Court's ruling on reargument that the availability of an alternative forum is not a threshold requirement before dismissing a complaint for *forum non conveniens*. The plaintiffs also appeal the Superior Court's refusal to condition dismissal on the defendants' agreement to waive their

---

[7] *Id.* at 495–97 (Mot. for Clarification or Rearg., at 4–6).
[8] *Hupan*, 2016 WL 4502304, at *8 (Del. Super. Aug. 25, 2016).
[9] *Id.*
[10] *Id.* at *11.

jurisdictional defenses and submit to jurisdiction in Argentina. "Generally, a trial court's decision to dismiss a complaint on the ground of *forum non conveniens* is reviewed by this Court for an abuse of discretion."[11] "Whether the trial court applied the appropriate legal standard in considering a motion to dismiss, however, presents this Court with a question of law that is reviewed *de novo*."[12]

*A.*

First, some context. The Latin words "*forum non conveniens*" mean "forum not agreeing."[13] Over time, the expression became associated with "convenience," meaning the defendant's inconvenience of litigating the dispute in the plaintiff's chosen forum.[14] *Forum non conveniens* was the solution to a practical problem

---

[11] *Mar–Land Indus. Contractors, Inc. v. Caribbean Petroleum Refining, L.P.*, 777 A.2d 774, 777 (Del. 2001) (citing *Ison v. E.I. DuPont De Nemours & Co., Inc.*, 729 A.2d 832, 847 (Del. 1999); *Williams Gas Supply Co. v. Apache Corp.*, 594 A.2d 34, 36 (Del. 1991)).

[12] *Id.*

[13] John A. Day, *Forum Not Agreeing*, 53 TENN. B.J. 28, n.1 (2017). The literal translation has been a matter of dispute. *See* Maggie Gardner, *Retiring Forum Non Conveniens*, 92 N.Y.U. L. REV. 390, 414 (2017) ("'Forum non conveniens' never meant 'inconvenient forum'; it translates more correctly to 'inappropriate' or 'unsuitable' forum.") (footnote omitted).

[14] *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981) ("[T]he central focus of the *forum non conveniens* inquiry is convenience . . . ."). According to one author,

> The exact origin of forum non conveniens is unknown, but its practice dates back to early English and Scottish law. The doctrine was first introduced into American law in 1929 in a Columbia Law Review article by Paxton Blair, a New York attorney. Blair implored American courts to employ such a doctrine in an effort to reduce "calendar congestion in the trial courts." The article quickly received "the kind of judicial reception that law professors dream of" when the United States Supreme Court addressed the issue in *Gulf Oil Corp. v. Gilbert* in 1947.

John P. Dobrovich, *Dismissal Under Forum Non Conveniens: Should the Availability Requirement Be a Threshold Issue When Applied to Nonessential Defendants*, 12 WIDENER L. REV. 561, 564

8

recognized early on by U.S. and foreign courts. With the liberalization of jurisdiction and venue requirements, plaintiffs began to file suits in courts that had little or no connection to the filing forum. Instead, they had a close connection to other jurisdictions whose courts were better suited to resolve the disputes.[15] Lacking a mechanism to transfer a dispute to another jurisdiction, the United States Supreme Court recognized *forum non conveniens*, which allowed courts to exercise their discretion to stay or dismiss a case in favor of a more convenient forum for resolving the dispute.[16]

---

(2006) (quoting Allen R. Stein, *Forum Non Conveniens and the Redundancy of Court-Access Doctrine*, 133 U. PA. L. REV. 781, 796–97 (1985); Paxton Blair, *The Doctrine of Forum Non Conveniens in Anglo-American Law*, 29 COLUM. L. REV. 1 (1929)); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) ("[T]he problem is a very old one affecting the administration of the courts as well as the rights of litigants, and both in England and in this country the common law worked out techniques and criteria for dealing with it."); *Piper Aircraft*, 454 U.S. at 248 ("The doctrine of *forum non conveniens* has a long history. It originated in Scotland, and became part of the common law of many States. The doctrine was also frequently applied in federal admiralty actions.") (citations omitted).

[15] Stein, *supra* note 14, at 796 ("The doctrine of forum non conveniens developed in the United States in direct response to the evolution of jurisdiction and venue and helped fill the growing gap between the form and substance of those doctrines. . . . The first such development was the restriction of federal common law in *Erie Railroad v. Tompkins*. . . . *Erie* limited the incentive to shop between state and federal forums, it renewed the incentives for parties to choose strategically among federal courts. Thus, the federal courts had a new-found need for a procedural defense against a flood of litigation. The second development . . . was the expansion of personal jurisdiction and the demise of *Pennoyer v. Neff*. The minimum-contacts test developed in *International Shoe* was in some sense based on all of these policies. Because jurisdiction no longer depended on the physical presence of a defendant within the jurisdiction, a number of states could assert jurisdiction over the same controversy, particularly when a corporate defendant was involved. Thus plaintiffs were given a whole new set of options to consider in selecting forums.").

[16] *Gulf Oil Corp.*, 330 U.S. 501; *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518 (1947).

Congress displaced the federal courts' application of *forum non conveniens* domestically by enacting 28 U.S.C. § 1404(a). Federal courts could now transfer cases between districts "for the convenience of the parties and witnesses" and "in the interests of justice."[17] But, transnational cases in the federal courts involving foreign plaintiffs and foreign disputes remain subject to *forum non conveniens* analysis.[18] And state courts were free for the most part to adopt their own procedures for addressing cross-jurisdictional domestic and foreign disputes.[19]

*B.*

In Delaware, *forum non conveniens* has become associated with the names of the Supreme Court cases recognizing the doctrine in various contexts—*General Foods Corp. v. Cryo–Maid, Inc.*,[20] *McWane Cast Iron Pipe Corp. v. McDowell–*

---

[17] *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955) ("When Congress adopted § 1404(a), it intended to do more than just codify the existing law on *forum non conveniens*. As this Court said in *Ex parte Collett*, [337 U.S. 55, 61 (1949)], Congress, in writing § 1404(a), which was an entirely new section, was revising as well as codifying. The harshest result of the application of the old doctrine of *forum non conveniens*, dismissal of the action, was eliminated by the provision in § 1404(a) for transfer.").

[18] The common law doctrine still applies "primarily when the 'more convenient forum' is [that of] a foreign country, rather than another federal district." *Grodinsky v. Fairchild Indus.*, 507 F. Supp. 1245, 1248 (D. Md. 1981). The doctrine also applies to federal courts where the only alternative forum is a state court. *Poe v. Marquette Cement Mfg. Co.*, 376 F. Supp. 1054, 1060 (D. Md. 1974).

[19] *Ison*, 729 A.2d at 840 n.28 ("State courts are not preempted by federal law in the context of international litigation between private parties unless a federal law, treaty or constitutional provision applies.").

[20] 198 A.2d 681 (Del. 1964), *overruled in part on other grounds by Pepsico, Inc. v. Pepsi-Cola Bottling Co. of Asbury Park*, 261 A.2d 520 (Del. 1969).

10

*Wellman Engineering Co.*,[21] and, recently, *Gramercy Emerging Markets Fund v. Allied Irish Banks, P.L.C.*[22]

In *Gramercy*, we summarized the different procedural postures of *forum non conveniens* disputes—a first-filed Delaware case with no case pending elsewhere (the *Cryo–Maid* test); a second-filed Delaware case with another first-filed case pending elsewhere (the *McWane* test); and a hybrid recently addressed by our Court in *Gramercy*—a later-filed Delaware case after another jurisdiction had dismissed a first-filed case for *forum non conveniens*. All these scenarios call upon the courts to apply, in one form or another, the same *forum non conveniens* factors. What changes is the strength of the presumptions applied. As explained in *Gramercy*:

> *McWane* draws on *Cryo–Maid*'s factors because both tests are rooted in *forum non conveniens* doctrine. "[W]hat distinguishes the application of [the *forum non conveniens*] factors in the *McWane* [and *Cryo-Maid*] contexts is 'the background presumption against which the elements are applied.'" Under *Cryo-Maid*, defendants must establish overwhelming hardship for Delaware courts to grant dismissal. Under *McWane*, Delaware courts have greater discretion in determining whether a stay or dismissal is proper.[23]

This appeal presents the first variation, where the case is filed in Delaware with no competing case in another jurisdiction. We noted in *Gramercy* the factors to be applied under *Cryo–Maid* to evaluate a *forum non conveniens* motion: (1) the

---

[21] 263 A.2d 281 (Del. 1970).

[22] 173 A.3d 1033 (Del. 2017).

[23] *Id*. at 1038 (quoting DONALD J. WOLFE, JR. & MICHAEL A. PITTENGER, CORPORATE AND COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY § 5.02 (2017)).

relative ease of access to proof; (2) the availability of a compulsory process for witnesses; (3) the possibility to view the premises, if appropriate; (4) all other practical problems that would make the trial easy, expeditious, and inexpensive; (5) whether the controversy is dependent upon Delaware law, which the courts of this State should decide rather than those of another jurisdiction; and (6) the pendency or non-pendency of a similar action in another jurisdiction.[24]

The Superior Court applied these factors and the background presumptions, and decided that the defendants demonstrated that they would face overwhelming hardship if the litigation proceeded in Delaware. On appeal, the plaintiffs do not challenge the Superior Court's application of the *Cryo–Maid* factors, or its conclusion. The plaintiffs do challenge the court's treatment of an available alternative forum as one of the factors to be considered before dismissal on *forum non conveniens* grounds. They urge us to follow other courts and make an available alternative forum a threshold requirement before dismissal.

Although the federal courts and most state courts require an available alternative forum before dismissing for *forum non conveniens*,[25] our Court never

---

[24] *Id.* at 1036–37 (internal citations omitted).

[25] *Piper Aircraft Co.*, 454 U.S. at 255 n.22 ("At the outset of any forum non conveniens inquiry, the court must determine whether there exists an alternative forum."); *Gulf Oil Corp.*, 330 U.S. at 506–07 (explaining that *forum non conveniens* "presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them"); Gregory D. Sarno, *Forum Non Conveniens Doctrine in State Court as Affected by Availability of Alternative Forum*, 7 A.L.R. 4th 973 (originally published 1981) (collecting cases).

adopted this requirement.  Admittedly, our cases have not directly addressed the question.[26]  But, several factors point to an implicit rejection of the requirement.  First, as our Court has decided *forum non conveniens* appeals, it has been well aware of United States Supreme Court precedent requiring an available alternative forum, but has not included it as a requirement.[27]  Further, as pointed out by the Superior Court, the Court's decisions, such as *Mar–Land Industrial Contractors, Inc. v. Caribbean Petroleum Refining, L.P.*, focused on the Delaware forum's convenience to the defendant, not the availability of an alternative forum:

> In determining whether to grant or deny a motion to dismiss on *forum non conveniens* grounds, the trial court is not permitted to compare Delaware, the plaintiff's chosen forum, with an alternate forum and decide which is the more appropriate location for the dispute to proceed.  Rather, the trial court must focus on whether the defendant has demonstrated with particularity, through the *Cryo–Maid* factors,

---

[26] None of the *Cryo–Maid*, *McWane*, or *Gramercy* cases raised the issue, which is not surprising. In each case, a related suit was pending in another jurisdiction or had been pending at one time but was dismissed on procedural grounds.  In *Martinez v. E.I. DuPont De Nemours & Co.*, although the requirement was raised in the Superior Court, our Court, in affirming, did not discuss it.  86 A.3d 1102, 1113 (Del. 2014).  A review of other Supreme Court cases addressing *forum non conveniens* shows the issue was not raised.  *See*, *e.g.*, *Mar–Land Indus. Contractors, Inc.*, *L.P.*, 777 A.2d 774; *Warburg, Pincus Ventures, L.P. v. Schrapper*, 774 A.2d 264 (Del. 2001); *Taylor v. LSI Logic Corp.*, 689 A.2d 1196 (Del. 1997).  The Delaware trial courts have treated the issue inconsistently.  *Compare VTB Bank v. Navitron Projects Corp.*, 2014 WL 1691250 (Del. Ch. Apr. 28, 2014) ("During its review of Supreme Court precedent, particularly [*Martinez*], the Court did not find language importing this additional element into the six, well recognized *Cryo–Maid* factors.") *with Abrahamsen v. ConocoPhillips Co.*, 2014 WL 2884870, at \*2 (Del. Super. May 30, 2014) ("The first step the Court must take in considering a *forum non conveniens* motion is to determine whether an alternative forum is available to hear the case.").

[27] *Martinez*, 86 A.3d at 1113 n.46; *Warburg, Pincus Ventures, L.P.*, 774 A.2d at 268 n.7; *Ison*, 729 A.2d at 839; *Taylor*, 689 A.2d at 1199 n.7; *Chrysler First Bus. Credit Corp. v. 1500 Locust Ltd. P'ship*, 669 A.2d 104, 106 (Del. 1995); *Yost v. Johnson*, 591 A.2d 178, 182 (Del. 1991); *Miller v. Phillips Petroleum Co. Nor.*, 537 A.2d 190, 201 (Del. 1988); *Kolber v. Holyoke Shares, Inc.*, 213 A.2d 444, 447 (Del. 1965).

that litigating in Delaware would result in an overwhelming hardship to it.[28]

The foregoing language, and similar language in other cases, might be addressing the *adequacy* of the alternative forum, having assumed the *availability* of one. But, in *Ison v. E.I. DuPont de Nemours & Co.*, the Court addressed the availability of an alternative forum within its *Cryo–Maid* analysis of "all other practical problems":

> The second important practical problem is one that has been avoided through DuPont's willingness to waive any jurisdictional or statutes of limitation defenses that it might possess in the alternate fora. *This removes any doubt that the plaintiffs would be able to assert their claims in their home countries.* Of course, this factor relates to the convenience of the plaintiffs, not to the inconvenience of the defendant. Thus, it balances in favor of DuPont, but is not probative of the overwhelming hardship issue.[29]

Rather than rely on inferences, the Court now has the opportunity to directly address the issue. We think that treating the issue as a factor to be considered, rather than as a requirement, gives the issue the weight it deserves in the *forum non conveniens* analysis. Much has changed in the *forum non conveniens* landscape since the United States Supreme Court's recognition of the doctrine in 1947. At the federal level, although *forum non conveniens* was intended to be a limited doctrine

---

[28] *Mar–Land*, 777 A.2d at 779 ("Our jurisprudence makes clear that on a motion to dismiss for *forum non conveniens*, whether an alternative forum would be more convenient for the litigation, or perhaps a better location, is irrelevant.").

[29] 729 A.2d at 846 (emphasis added).

that would "rarely" be successful in dismissing a plaintiff's choice of forum, in practice, the federal courts have often used the doctrine to dismiss actions.[30] With the doors to the federal courthouses closing, state courts now shoulder more of the transnational litigation.[31] These cases are complex and strain judicial resources. This case is a perfect example. A number of Argentinean plaintiffs claim injuries from conduct occurring in Argentina. Argentine law will apply, and the witnesses and records are all in Argentina. Delaware has no real connection to the dispute except for the defendants' place of incorporation. It is not unfair to suggest that, rather than *requiring* cases to proceed in Delaware in the absence of an alternative forum, the Superior Court should consider, on a case-by-case basis, whether the

---

[30] Gardner, *supra* note 13, at 396 ("[E]ven though the Supreme Court intended the doctrine to be applied 'rarely,' federal judges grant roughly half of motions to dismiss for forum non conveniens, at least in written opinions.") (citing Donald Earl Childress III, *Forum Conveniens: The Search for a Convenient Forum in Transnational Cases*, 53 Va. J. Int'l L. 157, 169 (2012) (finding motions to dismiss for *forum non conveniens* were granted in forty-eight percent of reported federal cases between 2007 and 2012); Joel H. Samuels, *When Is an Alternative Forum Available? Rethinking the Forum Non Conveniens Analysis*, 85 Ind. L.J. 1059, 1077 n.108 (2010) (finding motions to dismiss for *forum non conveniens* were granted in forty-one percent dismissal rate of reported federal cases between 1982 and 2007); A. Whytock, *The Evolving Forum Shopping System*, 96 Cornell L. Rev. 481, 502 (2011) (finding motions to dismiss for *forum non conveniens* were granted in forty-seven percent of reported federal cases between 1990 and 2005)).
[31] Laurel E. Miller, *Forum Non Conveniens and State Control of Foreign Plaintiff Access to U.S. Courts in International Tort Actions*, 58 U. Chi. Law. Rev. 1369, 1369 (1991) ("Federal courts have virtually closed their doors to foreign plaintiffs pursuing personal injury and products liability claims against U.S. corporations based on injuries incurred abroad. Those courts have done so by expansively interpreting the federal common law doctrine of forum non conveniens, which permits a court to dismiss a case on the ground that it may be tried more conveniently elsewhere. Meanwhile, pro-plaintiff tort laws, discovery rules, choice of law rules, contingent fee arrangements, and jury awards continue to attract foreign plaintiffs to U.S. forums. Thus, foreign plaintiffs increasingly sue in state courts, where the degree of adherence to the federal forum non conveniens standard varies among states.") (footnotes omitted).

court's resources should be deployed to resolve cases with little connection to Delaware—as the court did here.[32]

Although we are in the minority on the issue, we are not alone in our concern over the court's use of limited judicial resources by litigants who, along with their disputes, have no meaningful contact with the forum state. In *Islamic Republic of Iran v. Pahlavi*,[33] the New York Court of Appeals held that an available alternative forum was "a pertinent factor" that the court is required to consider, but it was not a precondition to dismissal.[34] Requiring an alternative forum, the court explained, "would place an undue burden on New York courts forcing them to accept foreign-based actions unrelated to this State merely because a more appropriate forum is unwilling or unable to accept jurisdiction."[35] The court noted that any "infirmity in plaintiff's legal system" should not be used to "impose disadvantage on the defendant or judicial system of this state."[36] It therefore affirmed the dismissal for *forum non conveniens*, concluding that taxpayers "should not be compelled to

---

[32] *See* Ann Alexander, *Forum Non Conveniens in the Absence of an Alternative Forum*, 86 COLUM. L. REV. 1000, 1019 (1986) ("Although a court that is not constitutionally required to take jurisdiction ought to take into consideration the hardship to the plaintiff of dismissal to a forum without a remedy, to make the forum non conveniens decision hinge on such a consideration would be contrary to the flexible purpose and policy underlying the doctrine.").

[33] 467 N.E.2d 245 (N.Y. 1984).

[34] *Id.* at 249 (citing *Varkonyi v. S. A. Empresa De Viacao Airea Rio Grandense (Varig)*, 239 N.E.2d 542 (N.Y. 1968)).

[35] *Id.* The court also noted that *forum non conveniens* is not the only situation where courts will dismiss a claim even if there is no alternative forum: the courts may also refuse to hear claims involving unclean hands, diplomatic immunity, or if the law is contrary to public policy. *Id.*

[36] *Id.* at 250.

assume the heavy financial burden attributable to the cost of administering the litigation contemplated when their interest in the suit and the connection of its subject matter to the State of New York is so ephemeral."[37]

In addition to our concerns about devoting judicial resources to cases with little connection to Delaware, an available alternative forum requirement raises concerns of international comity. *Forum non conveniens* is rooted in notions of comity,[38] but comity should be a two-way street. Through preemptive jurisdiction, or blocking statutes, some countries have erected barriers preventing plaintiffs from pursuing litigation in their home country once a case has been filed in the United States. Under these statutes or rules, the foreign jurisdiction must dismiss a second-filed case, even if a U.S. court dismissed the first-filed case on *forum non conveniens* grounds.[39] Also, plaintiffs can take steps to render the foreign jurisdiction unavailable.[40] The approach we adopt here might encourage foreign jurisdictions to

---

[37] *Id.*

[38] Stein, *supra* note 14, at 795–812; John R. Wilson, *Coming to America to File Suit: Foreign Plaintiffs and the Forum Non Conveniens Barrier in Transnational Litigation*, 65 OHIO ST. L.J. 659, 664–65 (2004); *Am. Dredging Co. v. Miller*, 510 U.S. 443, 463–65 (1994) (Kennedy, J., dissenting) (listing early admiralty cases that emphasized comity concerns); *Disconto Gesellschaft v. Umbreit*, 208 U.S. 570, 579 (1908); *The Belgenland*, 114 U.S. 355, 363 (1885).

[39] Jennifer L. Woulfe, *Where Forum Non Conveniens and Preemptive Jurisdiction Collide: An Analytical Look at Latin American Preemptive Jurisdiction Laws in the United States*, 30 ST. LOUIS U. PUB. L. REV. 171 (2010); Henry Saint Dahl, *Forum Non Conveniens, Latin America and Blocking Statutes*, 35 U. MIAMI INTER-AM. L. Rev. 21, 26–27 (2004) (noting use of preemptive jurisdiction and blocking statutes to dismiss later-filed foreign actions).

[40] *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.,* 470 F. Supp. 2d 917 (S.D. Ind. 2006) (plaintiff's attorneys took steps to insure that Mexican action was dismissed to support *forum non conveniens* argument in the United States); *Veba–Chemie A.G. v. M/V Getafix*, 711 F.2d 1243,

rethink laws and rules shifting to the U.S. courts disputes that are more closely connected to their own countries and citizens.[41]

The plaintiffs do raise an important concern—foreign plaintiffs who have been injured by Delaware corporations might not be able to bring cases in Delaware against those defendants. The concern, however, has not been ignored. The availability of an alternative forum in transnational cases is treated as a factor in the *forum non conveniens* analysis. The degree of the Delaware corporate defendant's connection to the alleged wrong will still be considered. The trial court will, however, have the discretion to dismiss a transnational dispute when the defendant has demonstrated overwhelming hardship if the case is litigated in the Delaware courts, even if an alternative forum is not available.

### III.

In its Rule 59 Motion, the plaintiffs asked the Superior Court to: (1) require the defendants to waive any defense regarding subject matter jurisdiction, personal jurisdiction, service of process, laches, and the statute of limitations; (2) require the defendants to satisfy any judgment rendered against them in Argentina; (3) grant the

---

1248 n.10 (5th Cir. 1985) ("Perhaps if the plaintiff's plight is of his own making—for instance, if the alternative forum was no longer available at the time of dismissal as a result of the deliberate choice of an inconvenient forum—the court would be permitted to disregard this consideration and dismiss. . . . [F]orum non conveniens is sensitive to plaintiff's motive for choosing his forum . . . .").

[41] *See Scotts Co. v. Hacienda Loma Linda*, 2 So.2d 1013 (Fla. App. 2008) (declining to follow the available adequate forum requirement and dismissing in the face of blocking statutes and preemption).

plaintiffs a reasonable time to conduct discovery; and (4) allow the plaintiffs to reinstate their claims in Delaware if Argentina declined to hear the case. The court declined to impose the conditions, and the plaintiffs raise only one of the conditions on appeal: the court's refusal to require the defendants to submit to jurisdiction in Argentina by relinquishing their statutes of limitations defenses. The Superior Court held the plaintiffs could not raise the requests for conditions for the first time in a Rule 59 motion.

We agree with the Superior Court. "Motions for reargument or alteration of judgment are not the appropriate method for a party to raise new arguments that it failed to present in a timely way."[42] Further, even if we were to reach the issue, under Superior Court Civil Rule 41(a)(2), the Superior Court has the discretion to dismiss a case "upon such terms and conditions as the Court deems proper." Because we have held that an available alternative forum is not a requirement before dismissal, the Superior Court did not abuse its discretion by refusing to impose conditions on the dismissal.

## IV.

An available alternative forum is not a threshold requirement before dismissing a case for *forum non conveniens*. The Superior Court properly addressed

---

[42] *Anvil Holding Corp. v. Iron Acquisition Co., Inc.*, 2013 WL 4447840, at *3 (Del. Ch. Aug. 16, 2013).

19

it as a factor to be considered as part of the *forum non conveniens* analysis. The

judgment of the Superior Court is affirmed.


**VAUGHN**, Justice, concurring:

I agree that our cases have not directly addressed whether an alternative forum

must be available before dismissing a case for *forum non conveniens*. My own view

of why this is so is that under the overwhelming hardship test motions to dismiss for

*forum non conveniens* have seldom been granted. In *Kolber v. Holyoke Shares, Inc.*,

then Justice Herrmann wrote that dismissal would occur only in "the rare case"

where the factors "balance overwhelmingly in favor of the defendant."[43] *Ison v. E.I.*

*DuPont de Nemours & Co.*, in my opinion, sent a strong message to the trial judges

that *forum non conveniens* motions were not favored and should generally be

denied.[44] It was not until *Martinez v. E.I. DuPont de Nemours and Co.* that this

Court clarified the overwhelming hardship test by stating that it was "not intended

to be preclusive."[45] When a motion to dismiss for *forum non conveniens* is denied

because of failure to show overwhelming hardship, there is little or no reason to

determine whether an alternative forum is available. I do not think that cases where

---

[43] 213 A.2d 444, 447 (Del. 1965).
[44] 729 A.2d 832 (Del. 1999).
[45] 86 A.3d 1102, 1105 (Del. 2014).

20

the motion was denied for failure to show overwhelming hardship provide any helpful guidance on the question of a need for an alternative, available forum.

I would join the great weight of authority that holds that in order to grant a motion to dismiss for *forum non conveniens*, a threshold step is to determine whether an adequate, alternative forum exists.[46] I do not think that the availability of an alternative forum should simply be a factor to be considered among other factors.

---

[46] The "action will not be dismissed unless a suitable alternative forum is available to the plaintiff. . . . [T]he suit will be entertained, no matter how inappropriate the forum may be, if the defendant cannot be subjected to jurisdiction in other states. The same will be true if the plaintiff's cause of action would elsewhere be barred by the statute of limitations, unless the court is willing to accept the defendant's stipulation that he will not raise this defense in the second state." Restatement (Second) of Conflict of Laws § 84 cmt. c (1971); "At the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981); "To prevail on a *forum non conveniens* argument, the defendant must demonstrate . . . that there is an available and adequate alternative forum to hear the case." *Callies v. United Heritage Prop. & Cas. Ins. Co.*, 2014 WL 1048846, at \*10 (Ariz. Ct. App. Mar. 18, 2014); "The lynchpin of any order granting a motion based on forum non conveniens is a determination that a suitable alternative forum exists." *Investors Equity Life Holding Co. v. Schmidt*, 233 Cal. App. 4th 1363, 1368 (Cal. Ct. App. 2015); "First, the court should determine whether an adequate alternative forum exists that possesses jurisdiction over the whole case." *Durkin v. Intevac, Inc.*, 782 A.2d 103, 112 (Conn. 2001); "An essential predicate to invocation of the [forum non conveniens] doctrine is the availability of an alternate forum." *Mobley v. S. Ry. Co.*, 418 A.2d 1044, 1047 (D.C. 1980); "As a prerequisite, the court must establish whether an adequate alternative forum exists which possesses jurisdiction over the whole case." *Cortez v. Palace Resorts, Inc.*, 123 So.3d 1085, 1091 (Fla. 2013) (citations and quotation marks omitted); "Before weighing the relevant factors, we must first decide how much deference to give to plaintiffs' choice of forum and second, we must decide whether the alternate forum is both available and adequate." *Gramercy Emerging Mkts. Fund v. Allied Irish Banks, P.L.C.*, 2014 WL 3735919, at \*4 (Ill. App. Ct. July 28, 2014) (citations omitted); "[A] judge may decline to hear a case, if there is an alternative forum in which justice may be had." *Gianocostas v. Interface Grp.– Mass., Inc.*, 881 N.E.2d 134, 140 (Mass. 2008); "[T]he forum non conveniens doctrine 'presupposes that there is at least one forum other than the forum chosen where the plaintiff may bring his cause of action[.]'" *Nithyananda Meditation Acad. v. Rao*, 2015 WL 1396465, at \*3 (Mich. Ct. App. Mar. 26, 2015) (citation omitted); "The first step in a forum non conveniens analysis is for the district court to establish the existence of an available and adequate alternative forum." *Paulownia Plantations de Pan. Corp. v. Rajamannan*, 793 N.W.2d 128, 133 (Minn. 2009)

In this case, however, I concur in the Court's judgment. I agree with the Majority's discussion of international comity and preemptive jurisdiction. Where factors such as preemptive jurisdiction may affect consideration of an alternative available forum, as may be the case here, a different rule may be appropriate. In addition, I am not sympathetic to a request that a defendant be required to waive objection to jurisdiction in another forum. As the Majority points out, the Superior Court noted within its analysis that it considered Argentina an available alternative forum. I am not inclined to disturb that finding in this case.

---

(citations omitted); "At the outset, a court determines whether there is an adequate alternative forum to adjudicate the parties' dispute." *Varo v. Owens–Ill., Inc.*, 948 A.2d 673, 680 (N.J. Super. Ct. App. Div. 2008); "[A] district court must determine 'whether an adequate alternative forum exists.'" *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 350 P.3d 392, 396 (Nev. 2015) (citations omitted); "[E]stablishing the adequacy of the proposed alternative forum is a threshold requirement." *Espinoza v. Evergreen Helicopters, Inc.*, 376 P.3d 960, 984 (Or. 2016); "[N]o action will be dismissed unless an alternative forum is available to the plaintiff." *Beatrice Foods Co. v. Proctor & Schwartz, Inc.*, 455 A.2d 646, 650 (Pa. Super. Ct. 1982); "If there is an adequate alternative forum, then the court must analyze and weigh" additional factors. *Diversified Striping Sys., Inc. v. Kraus*, 341 P.3d 932, 934 (Utah Ct. App. 2014); "In deciding whether to dismiss for forum non conveniens, the trial court must first determine whether an adequate alternative forum exists." *Acharya v. Microsoft Corp.*, 354 P.3d 908, 915 (Wash. Ct. App. 2015) (citation omitted).